365 S.E.2d 391

**Joseph P. CHABUT, II, d/b/a Elkins Truck & Wrecker Service, et al.**

v.

**PUBLIC SERVICE COMMISSION OF WEST VIRGINIA and Lowell Larew, etc., et al.**

**No. 17909.**

Supreme Court of Appeals of West Virginia.

Dec. 10, 1987.

Homer W. Hanna, Jr., Hanna & Elliott, Charleston, for petitioners.

Franklin G. Crabtree, S. Thornton Cooper, Charleston, for Public Service Com'n.

Milford G. Gibson, Elkins, for Robert L. Wyatt, et al.

Lowell Larew, pro se.

MILLER, Justice:

In this appeal, several tow truck businesses (petitioners) appeal a final order of the Public Service Commission (PSC) which approved the transfer of two certificates of convenience and necessity held by Lowell Larew, doing business as (d/b/a) Larew's Salvage Yard located near Tunnelton, Preston County, to Robert L. Wyatt, d/b/a Wyatt Auto & Truck Service located in Elkins, Randolph County. It appears that Larew had been approved to obtain Certificate No. F–5748 [1] from a Mr. Herron, d/b/a Barbour County Wrecker Service by a PSC order entered November 4, 1985. The other Certificate, No. F–5121,[2] had been obtained from a Steve Kurucz, d/b/a Steve's Auto Body by a PSC order entered December 9, 1985.

Petitioners assert a variety of procedural errors which appear to stem from some confusion over what are the requisite standards that must be met in order to obtain a transfer of an existing certificate of public convenience and necessity. We have not had occasion to address this question.[3]

The statute which authorizes the PSC to issue certificates for motor vehicle common carriers is W.Va.Code, 24A–2–5. Subsection (a) has traditionally controlled the standard for the initial issuance of a certificate. *Weirton Ice & Coal Supply Co. v. Public Serv. Comm'n*, 161 W.Va. 141, 240 S.E.2d 686 (1977). It provides that a showing of "the public convenience and necessity require the proposed service." [4]

The transfer of an existing certificate of convenience and necessity is controlled by W.Va.Code, 24A–2–5(c) which states, in part: "No certificate issued under this chapter shall be assigned or otherwise transferred without the approval of the commission." [5] Subsection (c) does not con-

---

1. Certificate No. F–5748 was to operate a motor vehicle common carrier, i.e., a wrecker truck within a twenty-five mile radius of Philippi, Barbour County, with the right to make occasional trips to and from more distant points.

2. Certificate No. F–5121 authorized the operation of a motor vehicle common carrier, i.e., a wrecker truck in Junior, Barbour County, and within a ten mile radius thereof.

3. In *Emery's Motor Coach Lines v. Mellon Nat'l Bank & Trust Co.*, 136 W.Va. 735, 68 S.E.2d 370, 30 A.L.R.2d 529 (1951), we merely acknowledged that the PSC had the authority to approve a transfer.

4. W.Va.Code, 24A–2–5(a) provides in relevant part:

   "(a) *Required; application; hearing; granting.*—It shall be unlawful for any common carrier by motor vehicle to operate within this state without first having obtained from the commission a certificate of convenience and necessity.... After the hearing or waiver by the commission of the hearing, if the commission finds from the evidence that the public convenience and necessity require the proposed service or any part thereof, it shall issue the certificate as prayed for, or issue it for the partial exercise only of the privilege sought, and may attach to the exercise of the right granted by such certificate such terms and conditions as in its judgment the public convenience and necessity may require, and if the commission shall be of the opinion that the service rendered by any common carrier

holding a certificate of convenience and necessity over any route or routes in this state is in any respect inadequate or insufficient to meet the public needs, such certificate holder shall be given reasonable time and opportunity to remedy such inadequacy or insufficiency before any certificate shall be granted to an applicant proposing to operate over such route or routes as a common carrier. Before granting a certificate to a common carrier by motor vehicle the commission shall take into consideration existing transportation facilities in the territory for which a certificate is sought, and in case it finds from the evidence that the service furnished by existing transportation facilities is reasonably efficient and adequate, the commission shall not grant such certificate."

5. The full text of W.Va.Code, 24A–2–5(c) is:

   "(c) *Certificate not franchise, etc.; assignment or transfer.*—No certificate issued in accordance with the terms of this chapter shall be construed to be either a franchise or irrevocable or to confer any proprietary or property rights in the use of the public highways. No certificate issued under this chapter shall be assigned or otherwise transferred without the approval of the commission. Upon the death of a person holding a certificate, his personal representative or representatives may operate under such certificate while the same remains in force and effect and, with the consent of the commission, may transfer such certificate."

tain any language requiring a showing that the public convenience and necessity be served by the transfer, as does subsection (a) in the case of an original certificate. The absence of such a requirement may well be explained by the fact that an existing operating certificate carries with it the presumption that the public convenience and necessity are being served since this was the basis on which it was first obtained. This is the position taken by the Virginia Supreme Court in *Park Bros. Moving Corp. v. S & M Systems Corp.*, 216 Va. 322, 326, 218 S.E.2d 441, 444 (1975):

> "The existing certificate carries with it a legislative declaration and a prima facie presumption that it does serve the public convenience and necessity, and the burden is on a protestant to a transfer to show ruinous or unreasonable competition, or that the transfer will not serve the public convenience and necessity." [6]

*See also Chartered Bus Serv. v. Dominion Coach Co.*, 232 Va. 357, 350 S.E.2d 625 (1986); *Be–Mac Transport Co., Inc. v. Illinois Commerce Comm'n*, 38 Ill.2d 154, 230 N.E.2d 216 (1967).

The North Dakota Supreme Court, in *Application of Skjonsby Truck Line, Inc.*, 357 N.W.2d 227, 232 (N.D.1984), interpreted a transfer statute that provided only for approval by the PSC, which language is similar to ours, and held that a showing of the public convenience and necessity was not required at a transfer hearing:

> "We conclude, as have courts in many other jurisdictions, that an independent determination of each of the factors of public convenience and necessity is not required in a transfer proceeding so long as the PSC prevents the expansion of old services, the revival of dormant rights,

or the creation of dual authorities from the single authority being sold. *See Bradley v. United States*, 322 F.Supp. 369 (D.Alaska 1971); *Bowman Transportation, Inc. v. United States*, 308 F.Supp. 1342 (N.D.Ala.1970); *Churchill Truck Lines v. Transportation Regulation Board, Etc.*, 274 N.W.2d 295 (Iowa 1979); *Spector Freight System, Inc. v. Herman Bros.*, 197 Neb. 835, 251 N.W.2d 376 (1977); *Application of Transit Homes, Inc.*, 173 Neb. 391, 113 N.W.2d 638 (1962); *Application of Transport, Inc. of South Dakota*, 75 S.D. 340, 64 N.W.2d 313 (1954); *Tarry Moving & Storage Co. v. Railroad Comm'n*, 367 S.W.2d 322 (Tex.1963)."

*See also, Vann Exp., Inc. v. Bee Line Exp., Inc.*, 347 So.2d 1353 (Ala.1977); *State ex rel. Utilities Comm'n v. Carolina Coach Co.*, 269 N.C. 717, 153 S.E.2d 461 (1967); *Hostetter v. Pennsylvania Public Utility Comm'n*, 160 Pa.Super. 94, 49 A.2d 862 (1946); *Murphy v. Public Service Comm'n*, 539 P.2d 367 (Utah 1975); Annot., 15 A.L.R.2d 883 (1951); 13 Am.Jur.2d, *Carriers* §§ 90–92 (1964).

We agree with the Virginia court's statement in *Park Bros.*, as to the central inquiry on a transfer which was taken from *Collett v. Public Service Comm'n*, 116 Utah 413, 418, 211 P.2d 185, 187 (1949):

> " '[T]hat the principal question in such a problem as this is that of the financial status, fitness, willingness and ability of the proposed new certificate holder to carry on the business: that so far as the public is concerned, the public convenience and necessity would not be adversely affected by the change in certificate holders.' " 216 Va. at 326, 218 S.E.2d at 444.[7]

---

**6.** This rule was set even though the Virginia statute on transfer of a certificate, Va.Code, 56–338.56, at the time of the *Park Bros.* case, provided in relevant part:

> "Any certificate may be transferred if the Commission finds ... that the proposed transfer is justified by the public convenience and necessity...."

**7.** This principle is reflected in the burden of proof section of the PSC regulation. 10 C.S.R. § 150–1–26IV(B)(1) at p. 21 provides:

> "Upon an application for approval of the transfer and assignment of a certificate or permit, the certificate or permit holder, i.e., transferor, and the transferee, i.e., the person seeking to acquire said certificate, shall appear at the hearing. The transferor should be prepared to testify as to the nature and extent of his operation under the certificate sought to be transferred, that he has actively been operating under the certificate and that the certificate is not otherwise dormant. *The transferee should be prepared to show that he*

*See also, State ex rel. Beaufort Transfer Co. v. Public Service Comm'n,* 593 S.W.2d 241 (Mo.App.1979); *Murphy v. Public Service Comm'n, supra.*

■ From the foregoing, we conclude that the transfer of such certificate does not depend upon a showing that the public convenience and necessity will be served. The chief inquiry at a transfer hearing is the ability of the new certificate holder to carry on the business.

One of the petitioners' main contentions is that Mr. Larew, the transferor, did not appear at the transfer hearing as prescribed by the rules of practice and procedure of the PSC. Procedural Rule § 150–1–26, Subsection IV(B)(1), as codified in Volume 10 of the Code of State Rules at p. 21, provides that both the transferor and transferee "shall appear at the hearing. The transferor should be prepared to testify as to the nature and extent of his operation ... that he has been actively operating ... and that the certificate is not otherwise dormant." [8]

■ The PSC, as did its hearing examiner, concluded that the absence of the transferor, Larew, was not fatal to the proceedings. This was primarily due to the fact that he had only held the certificates for less than two (2) months after he had been authorized to obtain them from their prior holders. It reasoned that at the earlier transfers, at which Mr. Larew was the transferee, no finding of dormancy was made. The PSC also stated that under its order transferring the certificates, Larew was given sixty (60) days to effectuate his operations and within this period he received approval to transfer them to Mr. Wyatt.[9] We affirm this ruling. As we have already indicated, the primary inquiry

> is financially able to provide the service, that he has the experience and the necessary equipment to provide the proposed service, that he is able to secure proper liability insurance on all motor vehicles to be operated, and should give a general description of his proposed operation. (Emphasis added.)

**8.** For the full text of this Rule see the preceding footnote.

at a transfer hearing is the fitness and capability of the transferee.

We also conclude that the petitioners' "dormancy" issue is without merit. The concept of "dormancy" relates to the failure of a certificate holder to operate for a period of time under the certificate. This can give rise to several adverse consequences to the certificate holder such as a cancellation of the certificate or, in the event of a transfer, a finding that it is not transferable because of nonuse. *E.g., Wright Trucking, Inc. v. United States,* 403 F.Supp. 119 (D.Mass.1975); *Herman Bros., Inc. v. Spector Indus., Inc.,* 209 Neb. 513, 308 N.W.2d 720 (1981).

The PSC concluded that the two-month period during which Mr. Larew was given authorization for the certificates and when he was given approval to transfer them to Mr. Wyatt on January 2, 1986, was not a "dormancy period." This was because the transfer order allowed a sixty-day period for Larew to become operational. We find the PSC was correct in its analysis. The New Hampshire Supreme Court in *Appeal of Global Moving & Storage of New Hampshire,* 122 N.H. 784, 451 A.2d 167 (1982), concluded that the Commissioner's order approving a transfer constituted an implied finding that transferor's operations had not become dormant, and that in a subsequent transfer proceeding a short time later the issue of dormancy could not be raised. Even longer periods of dormancy not sanctioned by a PSC order have been held insufficient to cause a loss of the certificate or to render inapplicable the presumption of continuance of public convenience and necessity. *Cavalier Storage Corp. v. Diamond Transfer and Storage, Inc.,* 220 Va. 651, 261 S.E.2d 314 (1980);

**9.** Mr. Wyatt had received PSC approval to obtain the certificates on January 2, 1986. This was based on the fact that no one protested the initial published notice to transfer. Under the publication provisions of W.Va.Code, 24A–2–5(a), the PSC may "if no protest is received, waive formal hearing on the application." Upon written complaint by some of the petitioners, the PSC reopened the case, caused further publication to be made and conducted a hearing which was held on December 1, 1986.

*Brooks Transfer and Storage Co., Inc. v. Turner,* 220 Va. 642, 261 S.E.2d 316 (1980).

The petitioners' other assignments of error may be briefly treated. They contend that Mr. Wyatt operated a wrecker towing service unlawfully for some two years before he obtained his permits on January 2, 1986. The hearing examiner and the PSC found that during this period he operated under a lease arrangement with one of the petitioners, Mr. Daniels.[10] We find this assignment meritless.

■ The contention is also made that the two certificates contain a geographic limitation, i.e., within ten miles of Junior in Barbour County; and within twenty-five miles of Philippi. From this, petitioners argue that the base of operations is designated as either Junior or Philippi. The PSC points out that there is no requirement that the business be located in these communities, but only that it be located within the operational territory. It appears that the base of Mr. Wyatt's operation is at Elkins which is within ten miles of Junior and twenty-five miles of Philippi.[11] In the absence of a business location designation, a certificate holder can locate his business establishment at any point in the operational territory covered by the permit.[12]

■ We also reject the petitioners' last two assignments. There was sufficient evidence of the transferee's financial ability to warrant the transfer. The claim that one of the Public Service Commissioners, who was the lawyer member, may not have participated in the April 30, 1987 decision because of a resignation would not affect the validity of the decision. W.Va.Code, 24–1–6 provides, in part:

"The concurrent judgment of two of the commissioners, when in session as the commission, shall be deemed the action of the commission, and a vacancy in the commission shall not affect the right or duty of the remaining commissioners to function as a commission."

For the foregoing reasons, we affirm the decision of the Public Service Commission.

Affirmed.

10. Mr. Daniels' testimony in this regard was: "I operate the business and have for all these years, which is quite sometime, and I have two employees that are body men and, of course, I have office help. But, the basic [sic] of my towing I do myself. I've done it all down through the years, exceptions of an interval in the late 1984, and all of 1985, and to February 28, 1986. During that period of time, Mr. Wyatt, Mr. Bob Wyatt, I gave him a lease on the vehicles that he had to operate my wrecker service for me during this period of time."

11. The PSC points out that with petitioner Daniels' Certificate (No. F–4386) there is an express designation of the place of business "within a radius of fifty miles ... from a place of business located at or near Elkins, Randolph County...."

12. The territorial limits of motor carrier certificates are measured from a radial point on a map, not by highway miles to particular locations.