422 S.E.2d 839

**SOLID WASTE SERVICES OF WEST VIRGINIA, Plaintiff Below, Appellant,**

v.

**PUBLIC SERVICE COMMISSION, Defendant Below, Appellee,**

**and**

**Halt Out–Of–State Garbage, Inc., Intervenor.**

**No. 20996.**

Supreme Court of Appeals of West Virginia.

Submitted May 5, 1992.

Decided July 15, 1992.

**16.** We decline to address assignments of error concerning other instructions inasmuch as they are without merit.

William F. Fox, Jr., Harleysville, Pa., for appellant.

Drexel M. Vealey, Public Service Com'n of West Virginia, for appellee.

Larry Harless, Charleston, for intervenor.

NEELY, Justice:

Solid Waste Services of West Virginia (SWS) appeals the decision of the Public Service Commission (PSC) that denied its application for a transfer of motor carrier certificates for hauling garbage within Wetzel, Tyler and portions of Marshall Counties from Eller Excavating and Hauling and Ma-Reb Corporation (Eller) to SWS. Alleging that the PSC's determination of SWS's "unfitness" was both legally and factually incorrect, SWS appeals. The intervenor, "Halt Out-of-State Garbage, Inc." (HOG) cross-appeals the PSC ruling that the SWS-owned landfill is not a utility asset within the PSC's jurisdiction. We agree with SWS and reverse the PSC regarding the transfer of permits, and affirm the PSC's decision regarding its lack of jurisdiction over the landfill transfer.

Solid Waste Services is owned by Pasquale N. Mascaro, and is one of several of Mr. Mascaro's companies involved in various aspects of the waste disposal business. Another Mascaro-owned company, Lackawanna Transport, is the owner and operator of the Wetzel County Landfill. Mr. Mascaro, without question, has the financial ability, equipment and expertise to perform adequately under the motor carrier permits. Mr. Mascaro disposes of garbage in over 30 localities, including one of the largest counties in Pennsylvania.[1] The local authorities in each of these jurisdictions are indisputably satisfied with the service provided by Mr. Mascaro's companies.

James D. Eller and Yonsell D. Eller, Jr., are the owners of Ma–Reb Corporation and Eller Excavating and Hauling (all hereinafter referred to as Eller). Those corporations, together, held the hauling permits in question. In May of 1987, Eller entered into an agreement to sell the Wetzel County Landfill (which it owned) to Lackawanna Transport, and (subject to PSC approval) to sell its motor carrier certificates for solid waste collection to SWS. On 5 April 1988, the Ellers filed an application with the PSC for the transfer of their garbage hauling permits to SWS.

The PSC permitted HOG to intervene in the permit transfer proceedings. HOG opposed the transfer, labelling Mr. Mascaro as unfit. HOG was in a do-or-die political battle with Lackawanna Transport over the disposal in this State of out-of-state garbage in the Wetzel County Landfill. HOG

1. Those localities are: Montgomery County, Abington, Cheltenham, Springfield, Upper Dublin, Whitemarsh, Jenkintown, Rockledge, Lower Moreland, Lower Southampton, Upper Southampton, Bristol, Ambler, Phoenixville, Norristown, Allentown, Emmaus, Northampton, Catasqua, North Catasqua, Sellersville, Perkasie, Quakertown, Hellertown, East Stroudsburg, Jessup, Olyphant, Avoca, Whitehaven, Mount Pocono, Carbondale, Troope, Lower Mount Bethel, Upper Mount Bethel, and Chestnut Hill.

argued that because the landfill is a utility asset, the transfer of the landfill to Lackawanna should have been approved by the PSC. The PSC staff supported both HOG's contentions that SWS is unfit and that the landfill is a utility asset.

On 30 June 1989, the PSC denied the transfer of the permits, but the PSC declined to exercise jurisdiction over the landfill. The denial of the permit transfer forced the Ellers to continue running their transport business long after they had hoped to be out of the business. The PSC staff then petitioned for a rehearing on the issue of whether the landfill should be considered a utility asset. The Ellers and SWS petitioned for a rehearing on the issue of transferring the garbage hauling permits. After oral argument, the PSC again denied the petition for transfer, but decided to hear more about the landfill as a utility asset. After holding two more hearings, the PSC affirmed its original decision in a final order, four years after the initial transfer application was made.

### I.

■ The well-established standard of review for decisions of the Public Service Commission is:

> In a proceeding for a certificate to operate as a common carrier an order of the Public Service Commission will not be disturbed on appeal unless its findings are contrary to the evidence, are without evidence to support them, are arbitrary or result from a misapplication of legal principles.

Syl. Pt. 1, *Weirton Ice & Coal Supply Co. v. Public Service Commission*, 161 W.Va. 141, 240 S.E.2d 686 (1977).[2]

■ As a matter of law, we continue to hold that "[t]he chief inquiry at a transfer hearing is the ability of the proposed new certificate holder to carry on the business." Syl. Pt. 2, *Chabut v. Public Service Commission*, 179 W.Va. 111, 365 S.E.2d 391 (1987). The PSC's own rules state:

**2.** Because we are, in fact, deciding the issue of whether the certificates should be transferred and the question of whether the landfill is an

Upon an application for approval of the transfer and assignment of a certificate or permit, the certificate or permit holder, i.e., transferor, and the transferee, i.e., the person seeking to acquire said certificate, shall appear at the hearing. The transferor should be prepared to testify as to the nature and extent of his operation under the certificate sought to be transferred that he has actively been operating under the certificate and that the certificate is not otherwise dormant. The transferee should be prepared to show that he is financially able to provide the service, that he has the experience and the necessary equipment to provide the proposed service, that he is able to secure proper liability insurance on all motor vehicles to be operated, and should give a general description of his proposed operation.

10 C.S.R. § 150–1–26IV(b)(1) at 21. In other words, at the PSC hearing the transferor is to describe what he does, and the transferee is supposed to describe how he can properly provide the existing level of service. This provision was designed to allow permits to be freely transferred so long as the entity acquiring the permits is capable of continuing the existing level of service. Unless the PSC finds that the acquiring party cannot meet the current level of service, the PSC has no grounds to deny the permit transfer.

The PSC articulated three measures for deciding whether to approve the transfer:

(1) That the proposed transferee is a *fit and proper* person to hold the certificate to serve the public as a common carrier; and

(2) That the proposed transferee has the financial ability to provide the service; and

(3) That the certificate is not dormant—that the holder thereof (transferor) has actively engaged in operation under the certificate sought to be trans-

asset of the hauling company on their merits, we find no merit to the intervenor's motion to dismiss the certificate transfer appeal.

ferred. *William P. Hopsons*, M.C. Case No. 16280 (1978). June 30, 1989, Order at 14.

■ Although PSC's language is technically correct, the use of the term "fit and proper" does not give the PSC an unlimited license to inquire into every minor regulatory transgression of each and every Mascaro-owned entity. "Fit and proper" is to be understood in terms of the PSC's own rules.[3] A carrier is "fit and proper" when it has the experience, equipment, insurance and financial ability to carry on the business that is being transferred.

■ Thus, the evidence cited by the PSC staff and HOG has little to do with the fitness of Mr. Mascaro. For example, the PSC cites evidence such as an increase in the traffic visiting the Wetzel County landfill since Lackawanna purchased it and the effects that the landfill expansion has had on the surrounding area. Appellee's brief at 14–16. Furthermore, the PSC cites the fact that they received over 300 letters of protest about the transfer. However, the PSC fails to note that most of those letters were evidence concerning the HOG–Lackawanna dispute about use of the Wetzel County Landfill to dispose of out-of-state garbage, not a real concern about who collects local garbage. While the HOG complaints may be legitimate concerns for the Division of Environmental Protection, they do not (and should not) affect the decision of whether Eller or SWS should continue to collect the local garbage.

The PSC also relies heavily on a 1988 evaluation of Mr. Mascaro's long-distance garbage hauling operations. At that time, Mr. Mascaro's corporations were just entering the field of long distance hauling after the unexpected closure of a Pennsylvania landfill Mr. Mascaro had previously been using. The Office of Motor Carrier Safety, Federal Highway Administration, U.S. Department of Transportation (DOT), inspected Mr. Mascaro's operation, and initially gave the operation an "unsatisfactory" rating. The PSC relies heavily on that rating.

However, the PSC ignores the rest of the story. First, the DOT based the "unsatisfactory" rating primarily on a lack of paperwork and record-keeping under our onerous combination of state and federal regulations. The DOT official, Dennis M. McGee, who conducted the examination noted that it was not unusual for a new venture to have problems complying initially with the regulations. Part of Mr. McGee's job is to assist companies who initially fail his review to comply with regulations. Mr. Mascaro cooperated fully with Mr. McGee, and Mr. Mascaro implemented the recommendations and complied with the DOT paperwork requirements.

The PSC's order acknowledges that all the evidence indicates that Solid Waste Services has the financial ability to perform the local hauling service. Similarly, the record also shows that Eller is an active hauling business. That leaves only to apply the "fit and proper" standard, which is really an inquiry into the experience, ability and insurance capability of the transferee.

In his dissenting opinion, Commissioner Casto correctly applied this test:

> ... [T]he record also reflects favorably on Mascaro operations in the local trash hauling business, which is the authority sought in this proceeding. The uncontested evidence in the record indicates that the Applicant for transfer is operating the local trash collection for over 30 municipalities and one of the largest counties in Pennsylvania and that local authorities are satisfied with the service being provided.

June 30, 1989, Order (Casto dissent).

The majority opinion, on the other hand, instead of addressing the issue to be decided under the Public Service Commission's own rule, namely 10 C.S.R. § 150–1–26IV(b)(1) (1987) quoted *supra*, uses the terms "fit and proper" to conduct a general character inquiry into every alleged minor transgression of any entity ever affiliated with Mr. Mascaro.[4] The Commission held:

---

**3.** 10 C.S.R. § 150–1–26IV(b)(1) at 21, quoted *supra*.

**4.** In support of this exceptionally broad inquiry, the Public Service Commission cites *Browning–Ferris Industries v. Public Service Commission,*

In looking at the past history of the Mascaro operations to determine whether or not Solid Waste Services of West Virginia is a fit and proper entity to operate as a common carrier in West Virginia, the Commission must consider the federal safety violations in its over-the-road operations[,] the results of Staff's investigations, the results of the Pennsylvania Department of Transportation investigations and environmental violations cited by the Pennsylvania Department of Environmental Resources in the Mascaros' Pennsylvania recycling and solid waste facilities. The history of and operations of these other Mascaro Companies is highly relevant to the Commission's consideration of fitness and weighs heavily in the issue of fitness as it relates to the proposed Transferee.

June 30, 1989, Order at 18. This broadening of the scope of inquiry, as a matter of law, exceeded the proper scope of the Public Service Commission's powers. The evidence clearly shows that Solid Waste Services has the ability more than adequately to provide the trash hauling services for Wetzel, Tyler and relevant portions of Marshall Counties.

Mr. Mascaro and his affiliated companies clearly have the capabilities to perform the trash collection service under the permits. Moreover, Mr. Mascaro has shown a willingness to comply with state regulation. In today's highly regulated society, nearly every large corporation has violated some government regulation. The fact that Mr. Mascaro's corporations do not have perfect records is not surprising, nor does it make Mr. Mascaro unfit. When Mr. Mascaro was informed by the Department of Transportation that he was not in compliance with their paperwork regulations, he improved his record-keeping. When he signed the consent adjudication with the Pennsylvania Department of Environmental Regulation, he did not admit wrongdoing, but instead acknowledged he had a problem with some of his operations, and that he had to remedy the situation:

> Overnight, I had to instead of taking trash ten miles to 100 miles, I had to trash (sic) 400 miles overnight without any notice. And what happened at that period of time was that this facility instantaneously became subject to a new set of logistics and variables related to the collection, processing and disposal of waste.

Transcript, November 14, 1988, at 122.

Mr. Mascaro is not a fly-by-night scofflaw, but has, in fact, invested substantial money in West Virginia. At the Wetzel County Landfill, Mr. Mascaro has installed a state-of-the-art, lined landfill in place of what was formerly a mere hole-in-the-ground dump. Not only will these improvements prevent future environmental problems at the landfill, but these improvements have probably ended over 15 years of stream pollution. This landfill is now one of the top five landfills in the State. Mr. Mascaro's operations are fully insured and bonded. Although his operations have not been free from violations of the myriad regulations imposed by local, state and federal authorities, he has complied after being informed of his deficiencies.

The refusal of the Public Service Commission to grant the transfer of the motor carrier permits in question was clearly er-

---

175 W.Va. 52, 330 S.E.2d 862 (1985) (per curiam) and *Stephens v. Public Service Commission,* 177 W.Va. 698, 356 S.E.2d 191 (1987) (per curiam) for the proposition that a company that willfully commits flagrant violations of the laws of this State should not be granted a certificate.

In both *Browning–Ferris Industries* and *Stephens,* the willful, flagrant violations of the law occurred when the applicants were directly competing with the existing certificate holders, and the applicants attempted to rely on their ability to compete successfully as evidence of "convenience and necessity" for the granting of the permit. This Court held that those who willfully violate the permit laws of the state cannot then turn around and be granted permits based on their own violations.

Such is not the case here. In the first instance, this is a transfer of existing permits; there is no need to inquire into the public "convenience and necessity." Additionally, if any violations of the law did occur (and it is not clear that they did) those violations were not willful or flagrant. Furthermore, in all instances cited by the Public Service Commission, Mr. Mascaro's operations took appropriate steps to correct any regulatory violations that existed.

roneous. As a matter of law, the Public Service Commission held Solid Waste Services to an inappropriate standard. Accordingly, the decision of the Public Service Commission is reversed.

## II.

■ The issue of the Mascaro-owned landfill is not relevant to this proceeding. Throughout these proceedings, HOG, the intervenor, has tried to bring information not relevant to this permit decision into these proceedings. Furthermore, the PSC staff has gone along with this unnecessary expansion of the scope of the proceeding by continually attempting to link the Mascaro-owned landfill activities to the local trash hauling activities. The consideration of a transfer of motor carrier permits is not the proper forum to address the serious environmental issues that the importation of large amounts of out-of-state garbage necessarily raise.

■ Both HOG and the staff of the PSC have sought to have the Wetzel County landfill declared a "utility asset" so that the Public Service Commission will have jurisdiction over a transfer of this asset. However, the Legislature has made it clear in passing *W.Va. Code,* § 22–1–1 *et seq.* (1991) [5] that all environmental programs in West Virginia are to be regulated by the Division of Environmental Protection. The proper forum for arguing about changes in the landfill regulation is the Division of Environmental Protection, not the Public Service Commission.

The business to be regulated by the permits in question is the business of hauling refuse. The landfill is appropriately regulated by the County Commission and the Division of Environmental Protection. There is no requirement that a hauler of refuse use his own landfill; the two activities are different operations even if undertaken by the same entity. The Public Service Commission correctly held:

The certificates in question in this case gave the Ellers *authority to transport trash, rubbish and garbage.* The Ellers' operation of the landfill did not arise out of authority granted by the Public Service Commission, the landfill was not exclusively used by Eller Excavating, the operation of the landfill was not allocated to the rates being charged and the landfill has not in the past or at the time of application been treated or defined as a public utility under West Virginia's public utility law. Accordingly, the Commission finds that the landfill is not a utility asset of the Eller collection companies subject to the jurisdiction of the Commission for sale or transfer. [Emphasis added]

June 30, 1989, Order at 19.

Although we are sympathetic to HOG's overall cause,[6] the granting or denial of the transfer of the motor carrier permits will not in any way affect the volume of trash being brought into the landfill. The present case concerns an active local trash collection permit. Indeed, all that would change if the transfer were granted is the name on the truck. Granting the transfer will not open the door to more out-of-state garbage; denying the permit will not lessen the amount of garbage being brought to the landfill.

---

**5.** The policy behind the creation of the Division of Environmental Protection is, in part:

"The dispersion of environmental protection programs across a number of state agencies ... [has] led to fragmented, duplicative and often inconsistent state policies relating to the protection of the environment." *W.Va. Code,* § 22–1–1(a)(4).

The Governor implemented this section through Exec. Order No. 8–92 (1992).

**6.** We should also point out that the HOG goal of halting solely "out-of-state" garbage has been found to violate the United States Constitution by the United States Supreme Court. *See Chem-*

*ical Waste Management, Inc. v. Hunt,* —— U.S. ——, 112 S.Ct. 2009, 119 L.Ed.2d 121 (1992); *Fort Gratiot Landfill, Inc. v. Michigan Department of Natural Resources,* —— U.S. ——, 112 S.Ct. 2019, 119 L.Ed.2d 139 (1992). *See also, Philadelphia v. New Jersey,* 437 U.S. 617, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978).

Of course, if the landfill is in fact creating a nuisance to its neighbors, then remedies are available in the Legislature, the County Commission, the U.S. Environmental Protection Agency, the Division of Environmental Protection, and in tort. The nuisance question has to do with the landfill as a whole, not solely the importation of out-of-state garbage.

### III.

For the foregoing reasons, the decision of the Public Service Commission regarding the transfer of the Eller permits is reversed; the decision of the Public Service Commission about its lack of jurisdiction over the landfill is affirmed, and the case is remanded for further proceedings consistent with this opinion.

Reversed in part, Affirmed in part and Remanded.