429 S.E.2d 899

**BRAXTON COUNTY CITIZENS FOR A BETTER ENVIRONMENT, in its capacity as an Unincorporated Association; and Virginia Carr, in her capacity as Chairperson of Braxton County Citizens for a Better Environment, Plaintiffs Below, Appellants,**

v.

**The PUBLIC SERVICE COMMISSION OF WEST VIRGINIA and Central West Virginia Refuse, Inc., Defendants Below, Appellees.**

No. 21358.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 20, 1993.

Decided April 23, 1993.

Michael C. Farber, Sutton, for appellants.

Lisa L. Wansley, Charleston, for appellee, Public Service Com'n.

Arden Curry, Pauley, Curry, Sturgeon & Vanderford, Charleston, for appellee, Central West Virginia Refuse, Inc.

PER CURIAM:

In this appeal, the appellants, Braxton County Citizens for a Better Environment and Virginia Carr, its chairperson, claim that the West Virginia Public Service Commission erred in authorizing Central West Virginia Refuse, Inc., to sell and assign to another corporation, Regional Resource Development Corporation, all its capital stock. The appellants argue that the evidence developed before the Public Service Commission fails to show that Regional Resource Development Corporation has sufficient financial standing to conduct the business of Central West Virginia Refuse, Inc., in a manner that does not adversely affect the public interest and that given this circumstance the law dictates that the Public Service Commission should disallow the transfer of the stock. After reviewing the questions presented, as well as the documents filed, this Court disagrees with the appellants' position. The decision of the West Virginia Public Service Commission is, therefore, affirmed.

Central West Virginia Refuse, Inc., operates a refuse collection service in Braxton, Gilmer, and Clay Counties, West Virginia. It also operates a solid waste disposal facility in Braxton County. Kenton Meadows Company, Inc., is the owner of all the issued and outstanding stock of Central West Virginia Refuse, Inc.

On August 2, 1989, Kenton Meadows Company, Inc., petitioned the West Virginia Public Service Commission for permission to sell and assign all the common stock of Central West Virginia Refuse, Inc., to Regional Resource Development Corporation, a Delaware corporation, which proposed to establish a West Virginia affiliate to be called Gassaway Resource Development Corporation.

A public hearing on the question of whether the stock should be transferred was conducted in Braxton County on November 2, 1989. At the conclusion of that hearing, an administrative law judge recommended that authority be granted for the sale of the stock.

The staff of the West Virginia Public Service Commission, after examining the recommended decision, took exception to it, and the case was remanded to the administrative law judge for further hearing and consideration.

Additional hearings were conducted in June and July, 1990, and the appellant, Braxton County Citizens for a Better Environment, was granted intervenor status at the beginning of those hearings.

Braxton County Citizens for a Better Environment, during the hearings, opposed the sale of the stock premised upon the belief that the proposed purchaser, Regional Resource Development Corporation, was so grossly undercapitalized that it was not financially able to operate a garbage collection service and solid waste landfill, of the type maintained by Central West Virginia Refuse, Inc., in the State of West Virginia. It, in essence, argued that Regional Resource Development Corporation was nothing more than a "shell" corporation and that serious questions existed as to whether its takeover of Central West Virginia Refuse, Inc., would adversely affect the public interest.

Evidence developed during the hearings showed that Regional Resource Development Corporation, the proposed purchaser, was a newly organized, for-profit business corporation and that it had authority to issue 2000 shares of common stock. The promoters of the corporation, Fred Harrison, Sr., and Fred Harrison, Jr., had operated solid waste businesses in New Jersey and Pennsylvania.

The evidence also showed that Regional Resource Development Corporation did not own real any property and that it did not intend to own real estate in West Virginia in the future. It also appeared that neither Regional Resource Development Corporation nor its proposed subsidiary, Gassaway Resource Development Corporation, had performed any financial analysis of Central's garbage collection service or landfill operation based upon its permitted tonnage.

Lastly, evidence regarding the financial situations of Frederick Harrison, Jr., and Frederick Harrison, Sr., proposed officers of Regional Resource Development Corporation, was introduced, as well as evidence that they intended to be guarantors of the corporation's operations. The evidence, which the appellant, Braxton County Citizens for a Better Environment, calls "self-serving, unaudited financial reports" showed that the Harrisons, taken together, had a substantial net worth.

At the conclusion of the hearings, the administrative law judge found that:

At this time, the Transferee could not adequately discuss how the operation of the landfill and the motor carrier would be financed if and when the transfer of stock is approved. The Harrisons did express a willingness to divert some of their personal resources and the resources of their affiliated corporations into the new venture, but the primary source of funding was anticipated to be through bank loans. The Transferee had no letter of commitments from any financial institution, and it had only very am-

biguous preliminary discussions with certain banks.

Based upon these conclusions, the administrative law judge found that Regional Resource Development Corporation was financially unfit to acquire the common stock of Central West Virginia Refuse, Inc., because of "... too many uncertainties and unsubstantiated claims at this time to allow the ALJ to responsibly find that ... Regional ... [has] the necessary financial commitments and resources to operate the landfill on a prospective basis."

After receiving the administrative law judge's recommended decision and considering the record made, the West Virginia Public Service Commission, on November 8, 1991, reversed the recommended decision and approved the transfer of the stock. In so doing, the Commission reasoned that, while the evidence showed that Regional Resource Development Corporation was arguably underfunded, the fitness of the proposed transferee could be evaluated only realistically by considering the fitness of its owners and proposed guarantors of its operation, Fred Harrison, Sr., and Fred Harrison, Jr. It also concluded that when their resources were considered, the overall operation was adequately funded and that the transfer of the stock should be allowed.

In the present appeal, the appellants, who claim that the Public Service Commission erred in authorizing the transfer of the stock, argue that Regional Resource Development Corporation is nothing more than a shell corporation, which is being used by the Harrisons as a corporate front to limit their risk of personal liability in acquiring the assets of Central West Virginia Refuse, Inc. They also argue that Regional Resource Development Corporation proposes to operate a solid waste landfill, which is a business that is notoriously dangerous to public health and safety, and that allowing a grossly undercapitalized, newly incorporated business to take over such an operation is potentially hazardous to the citizens of this State.

■ This Court has rather consistently recognized that an order of the Public Service Commission based upon findings of fact will not be disturbed unless such findings are contrary to the evidence or without evidence to support them, are arbitrary and capricious, or are the result of the misapplication of legal principles. *Monongahela Power Co. v. Public Service Commission*, 166 W.Va. 423, 276 S.E.2d 179 (1981); *Virginia Electric & Power Co. v. Public Service Commission of West Virginia*, 161 W.Va. 423, 242 S.E.2d 698 (1978); *Boggs v. Public Service Commission*, 154 W.Va. 146, 174 S.E.2d 331 (1970); *United Fuel Gas Co. v. Public Service Commission*, 73 W.Va. 571, 80 S.E. 931 (1914).

In syllabus point 5 of *Boggs v. Public Service Commission, supra,* the Court summarized the rule as follows:

"The principle is well established by the decisions of this Court that an order of the public service commission based upon its finding of facts will not be disturbed unless such finding is contrary to the evidence, or is without evidence to support it, or is arbitrary, or results from a misapplication of legal principles." *United Fuel Gas Company v. Public Service Commission*, 143 W.Va. 33 [99 S.E.2d 1].

In *Monongahela Power Co. v. Public Service Commission, supra,* the Court, in some detail, indicated how it would review a Public Service Commission finding to determine whether it was legally appropriate. In syllabus point 2, the Court stated:

In reviewing a Public Service Commission order, we will first determine whether the Commission's order, viewed in light of the relevant facts and of the Commission's broad regulatory duties, abused or exceeded its authority. We will examine the manner in which the Commission has employed the methods of regulation which it has itself selected, and must decide whether each of the order's essential elements is supported by substantial evidence. Finally, we will determine whether the order may reasonably be expected to maintain financial integrity, attract necessary capital, and fairly compensate investors for the risks they have assumed, and yet provide appropriate protection to the relevant pub-

lic interests, both existing and foreseeable. The court's responsibility is not to supplant the Commission's balance of these interests with one more nearly to its liking, but instead to assure itself that the Commission has given reasoned consideration to each of the pertinent factors.

■ In the present case, as previously indicated, the principal issue is whether the Public Service Commission properly approved the transfer of the stock of Central West Virginia Refuse, Inc., to Regional Resource Development Corporation.

In two fairly recent cases this Court discussed the question of when the transfer of a certificate of convenience and necessity should be approved by the Public Service Commission. In the first case, *Chabut v. Public Service Commission*, 179 W.Va. 111, 365 S.E.2d 391 (1987), the Court indicated that the chief inquiry at a transfer hearing is the ability of the new certificate holder to carry on business. In the second case, *Solid Waste Services v. Public Service Commission and Halt Out of State Garbage*, 188 W.Va. 117, 422 S.E.2d 839 (1992), the Court indicated that the inquiry should include the proposed transferee's financial ability, experience, equipment, and ability to obtain liability insurance.

While the present case does not focus on the transfer of a certificate of convenience and necessity, but rather the transfer of stock, it is apparent that the Public Service Commission's involvement arises by virtue of the fact that a certificate of convenience and necessity is involved, and, given the fact that the Commission's duty is to insure that the public is not adversely affected, this Court believes that the issues in the present case should be governed by essentially the same principles that would govern the decision to deny or authorize the transfer of a certificate of convenience and necessity. In essence, the real question is whether Regional Resource Development Corporation has the ability to carry on Central West Virginia Refuse's business, with the focus being upon Regional Resource Development Corporation's financial ability, experience, equipment, and ability to obtain liability insurance.

While the evidence adduced suggests that Regional Resource Development Corporation is a new corporation, its promoters, the Harrisons, during the hearings in this case undertook to provide funds to the corporation to enable it to carry out its business. Evidence was also introduced indicating that Frederick Harrison, Sr., had net assets which exceeded $2.8 million, while his son's assets exceeded $1.8 million. An accountant testified that their personal finances were such that they could obtain proper financing for the landfill.

There was further evidence that the Harrisons had experience in operating solid waste businesses and owned and operated three solid waste businesses. Two of the businesses were solid waste collection businesses operating in New Jersey. The third was a solid waste transfer station located in Pennsylvania. According to the evidence, all the companies were financially sound.

One of the New Jersey companies had fourteen employees and produced revenues of approximately $1.6 million per year. Since 1971 it had received only one environmental citation for an improper mixture of waste. The second New Jersey business employed approximately twenty-four employees and owned seventy-nine pieces of equipment. It generated over $5 million a year in revenues and had received no environmental citations. The Pennsylvania company owned approximately seventy-five pieces of rolling stock and had never been cited for safety or environmental violations.

In the course of the proceedings, several witnesses testified that environmental liability insurance existed and could easily be obtained after transfer of the stock was approved by the Public Service Commission and after matters pending before the Department of Natural Resources, including permits, were settled.

Lastly, evidence was introduced showing that Regional Resource Development Corporation proposed to make certain improvements to Central West Virginia Refuse's

landfill, including the installation of a state-of-the-art liner, which would remedy certain environmental problems connected with the operation of the landfill.

In *Monongahela Power Co. v. Public Service Commission, supra,* this Court stated principles which must govern the review of a Public Service Commission's decision. The Court indicated that its responsibility is not to supplant the Commission's balance of competing interests with one more nearly to its own liking, but instead to assure that the Commission has given reasoned consideration to the factors outlined in the case.

After reviewing the documents filed in the present case, the Court believes that the Public Service Commission did address questions relevant to the transfer of the stock of Central West Virginia Refuse, Inc., and did undertake to insure that the public interest would be protected and promoted as a result of the transfer of the stock. In light of the evidence adduced, the Court cannot conclude that the Commission abused or exceeded its authority in authorizing the transfer of the stock, and the Court cannot conclude that the conclusions made by the Commission were not supported by substantial evidence. Lastly, the Court believes that the evidence shows that, given the financial undertakings and guarantees by the Harrisons, the promoters of Regional Resource Development Corp., as well as their history of the successful operation of three waste businesses in other states, the Public Service Commission's order may reasonably be expected to maintain the financial integrity of the Central West Virginia Refuse, Inc., operations located in West Virginia. In view of the facts and circumstances of this case, this Court concludes that the Public Service Commission's final order should be affirmed.

The judgment of the West Virginia Public Service Commission is, therefore, affirmed.

Affirmed.