491 S.E.2d 19

BEBE ENTERPRISES, INC., Petitioner Below, Appellant,

v.

The PUBLIC SERVICE COMMISSION OF WEST VIRGINIA, Morgan Sanitation & Recycling Corporation, and, Eddie Hairston, Jr., d/b/a Hairston Garbage Disposal, Respondent Below, Appellee.

No. 23452.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 22, 1997.

Decided July 1, 1997.

Thomas N. Hanna, Charleston, for Appellant.

Lisa L. Wansley, Charleston, for Public Service Commission.

Leonard Knee, Charles B. Dollison, Bowles Rice McDavid Graff & Love, Charleston, for Morgan Sanitation & Recycling Corporation.

PER CURIAM:

This is an appeal by Bebe Enterprises, Inc. (hereinafter "Appellant"), from a February 21, 1996, order of the West Virginia Public Service Commission (hereinafter

"PSC") denying the Appellant's request to add territory to its existing garbage collection route in McDowell County. The Appellant contends that the PSC's denial of its request was based upon a misapplication of legal principles. We affirm the decision of the PSC.

## I.

### FACTUAL BACKGROUND

On March 13, 1995, Eddie Hairston, d.b.a. Hairston Garbage Disposal Hairston (hereinafter "Hairston") filed an application with the PSC for transfer of Hairston's authority for a particular subject territory in McDowell County to another hauling company, Morgan Sanitation (hereinafter "Morgan").[1] The Appellant protested this transfer, as did other area carriers. On March 15, 1995, the Appellant sought to amend its own common carrier certificate to include authority to provide service to the area formerly served by Hairston.[2] Hairston and Morgan then protested the Appellant's application to serve these additional areas.[3]

On June 22, 1995, Administrative Law Judge Miles C. Cary held a hearing on the proposed transfer of territory from Hairston to Morgan. Mr. Thomas Hanna, attorney for the Appellant, was present. Based upon an agreement between Morgan and the Appellant regarding the transfer language, the Appellant withdrew its protest. The additional agreed-upon language provided: "and excluding all points going north on Route 161 that are more than one-half mile by road from the intersection of Route 103 and Route 161."

On August 8, 1995, Administrative Law Judge Cary issued a recommended decision approving the transfer of the territory from Hairston to Morgan, as amended pursuant to agreement between Morgan and the Appel-

lant. Final approval of this transfer was delayed until February 6, 1996, due to intervention of commission staff members in an attempt to obtain clarification of language contained in the new Morgan certificate regarding Routes 103 and 161.

On August 18, 1995, Administrative Law Judge Robert W. Glass held a hearing on the Appellant's application for the territory. The Appellant introduced evidence regarding the inadequacy of Hairston's service, contending that approximately 200 of Hairston's customers had apparently been taken over by Appellant and twenty-five customers had been assumed by Morgan. Even the city of Gary, West Virginia, apparently took over some of the service for Hairston's 520 customers. Public Service Commission utility inspector Mr. Charles Dyer also testified that the PSC had received numerous complaints about Hairston's service from 1993–1995. Those complaints alleged decreased significantly when Morgan began servicing Hairston's customers.

Morgan was permitted to participate in the August 18, 1995, hearing due to its status as intervenor in the matter, and it presented the testimony of two customers formerly served by Hairston. Each customer testified that she was satisfied with Morgan's service. On August 21, 1995, Morgan withdrew its request for emergency certification for the area.

On August 23, 1995, Thornton Cooper, Deputy Director of Transportation Division, filed a motion to intervene and also filed exceptions to the August 8, 1995, recommended order of Administrative Law Judge Cary. Mr. Cooper expressed concern that although the parties may have understood the language and intent of the amended section, that section was ambiguous. On September 5, 1995, counsel for Morgan, Leonard Knee, filed a map depicting the intent of the

1. This procedure was technically considered a **transfer** matter for purposes of determining burden of proof among various carriers seeking the territory.

2. This procedure was technically considered an **application** matter for purposes of determining burden of proof among the carriers seeking this territory.

3. On March 16, 1995, Morgan filed an application with the PSC for a certificate and emergency authority to serve Hairston's territory. This application was withdrawn at Morgan's request on August 21, 1995.

parties regarding the areas surrounding Routes 103 and 161. On September 13, 1995, Mr. Cooper recommended that those route numbered areas be referenced as certain territory rather than a road route number.

On November 9, 1995, Administrative Law Judge Glass issued a recommended order denying the Appellant's application to serve the area in question. The order stated that the Appellant had not "met its burden to show that there exists in the area of the amendment a need for additional trash service that is not being adequately and efficiently provided by the presently certificated trash haulers serving the area." However, the order also recognized that the transfer of authority from Hairston to Morgan had not yet been approved and was then pending. The Appellant filed exceptions to Administrative Law Judge Glass' order on November 27, 1995.

On February 6, 1996, the territory in question was transferred from Hairston to Morgan, and Hairston was paid $10,000. The PSC approved the transfer as amended by Morgan/Bebe agreement and including the territory restatement by Mr. Cooper and his staff, as referenced above. By order dated February 21, 1996, the PSC reiterated the November 9, 1995, recommended order denying the Appellant's application. On March 22, 1996, the Appellant filed its petition with this Court.

## II.

### STANDARD OF REVIEW AND PSC EVALUATION

■ This Court's standard of review with respect to this matter was enunciated in syllabus point one of *Sexton v. Public Service Commission*, 188 W.Va. 305, 423 S.E.2d 914 (1992), as follows:

" ' "[A]n order of the public service commission based upon its finding of facts will not be disturbed unless such finding is contrary to the evidence, or is without evidence to support it, or is arbitrary, or results from a misapplication of legal principles." *United Fuel Gas Company v. The Public Service Commission*, 143 W.Va. 33, 99 S.E.2d 1 (1957).' Syllabus Point 5, in

part, *Boggs v. Public Service Comm'n*, 154 W.Va. 146, 174 S.E.2d 331 (1970)." Syllabus Point 1, *Broadmoor/Timberline Apartments v. Public Service Commission*, 180 W.Va. 387, 376 S.E.2d 593 (1988).

The Appellant asserts that the PSC was clearly wrong in denying its request for an amendment to expand service to the area in question. The Appellant further asserts that Morgan, an existing carrier serving without PSC authority, should not be permitted to use evidence of its adequate service to prevent a prospective applicant for the same territory from obtaining a certificate for the territory. The Appellant also contends that the PSC was presented with two separate and distinct matters, which the PSC then inappropriately combined. Morgan's case regarded transfer while the Appellant's case dealt with adequacy of existing services. The Appellant contends that the matters were not proper for consolidation because they involved different inquiries and that the PSC did not adequately address the issues raised by the Appellant.

West Virginia Code § 24A–2–5(a)–(c) (1992) provides the requirements for a certificate of convenience and necessity and establishes that a common carrier may obtain a certificate from the PSC by filing an application and by participating in a hearing procedure. Subsection (a) of the statute provides, in pertinent part, as follows:

[I]f the commission finds from the evidence that the public convenience and necessity require the proposed service or any part thereof, it shall issue the certificate as prayed for, or issue it for the partial exercise only of the privilege sought, and may attach to the exercise of the right granted by such certificate such terms and conditions as in its judgment the public convenience and necessity may require, and if the commission shall be of the opinion that the service rendered by any common carrier holding a certificate of convenience and necessity over any route or routes in this state is in any respect inadequate or insufficient to meet the public needs, such certificate holder shall be given reasonable time and opportunity to remedy such inadequacy or insufficiency before any certifi-

cate shall be granted to an applicant proposing to operate over such route or routes as a common carrier. Before granting a certificate to a common carrier by motor vehicle the commission shall take into consideration existing transportation facilities in the territory for which a certificate is sought, and in case it finds from the evidence that the service furnished by existing transportation facilities is reasonably efficient and adequate, the commission shall not grant such certificate.

Subsection (b) of that statute provides that the burden of proof shall be upon the applicant in establishing that public convenience and necessity do exist. Subsection (c) explains that a certificate may be assigned or transferred with the approval of the commission.

Morgan maintains that the PSC's decision is legally correct and justified by the evidence. Morgan presented two witnesses who testified that they were already receiving adequate service from Morgan. The Appellant was, according to Morgan's argument, unable to prove that its services were needed in the area. Morgan also maintains that the Appellant was present at the hearing granting Hairston's area to Morgan and that no exceptions were filed to the recommended decision or final order granting Hairston's territory to Morgan.

The PSC contends that the Appellant misinterprets West Virginia Code § 24A–2–5 and that the PSC is not required to grant an amendment where collection currently provided is inadequate. The PSC further emphasizes that the burden of proof in a transfer case (Hairston's transfer to Morgan) is lower than the burden of proof in an application matter such as that initiated by the Appellant. Transfer cases simply require evidence of the transferee's fitness while application cases require evidence of public convenience and necessity.

In *Solid Waste Services of West Virginia v. Public Service Commission*, 188 W.Va. 117, 422 S.E.2d 839 (1992), we reiterated that " '[t]he chief inquiry at a transfer hearing is the ability of the proposed new certificate holder to carry on the business.' " *Id.* at 119, 422 S.E.2d at 841, quoting Syl. Pt. 2, *Chabut*

*v. Public Service Comm'n*, 179 W.Va. 111, 365 S.E.2d 391 (1987). The rule governing the PSC's examination of applications for approval of transfer provides as follows:

> Upon an application for approval of the transfer and assignment of a certificate or permit, the certificate or permit holder, i.e., transferor, and the transferee, i.e., the person seeking to acquire said certificate, shall appear at the hearing. The transferor should be prepared to testify as to the nature and extent of his operation under the certificate sought to be transferred that he has actively been operating under the certificate and that the certificate is not otherwise dormant. The transferee should be prepared to show that he is financially able to provide the service, that he has the experience and the necessary equipment to provide the proposed service, that he is able to secure proper liability insurance on all motor vehicles to be operated, and should give a general description of his proposed operation.

10 C.S.R. Sec. 150–1–26IV(b)(1) at 21. Paraphrasing that rule in *Solid Waste Services*, we explained as follows:

> In other words, at the PSC hearing the transferor is to describe what he does, and the transferee is supposed to describe how he can properly provide the existing level of service. This provision was designed to allow permits to be freely transferred so long as the entity acquiring the permits is capable of continuing the existing level of service. Unless the PSC finds that the acquiring party cannot meet the current level of service, the PSC has no grounds to deny the permit transfer.

188 W.Va. at 119, 422 S.E.2d at 841.

III.

CONCLUSION

In syllabus point two of *Monongahela Power Company v. Public Service Commission*, 166 W.Va. 423, 276 S.E.2d 179 (1981), we concisely defined our role in reviewing PSC decisions, as follows:

> In reviewing a Public Service Commission order, we will first determine whether the Commission's order, viewed in light of

the relevant facts and of the Commission's broad regulatory duties, abused or exceeded its authority. We will examine the manner in which the Commission has employed the methods of regulation which it has itself selected, and must decide whether each of the order's essential elements is supported by substantial evidence. Finally, we will determine whether the order may reasonably be expected to maintain financial integrity, attract necessary capital, and fairly compensate investors for the risks they have assumed, and yet provide appropriate protection to the relevant public interests, both existing and foreseeable. The court's responsibility is not to supplant the Commission's balance of these interests with one more nearly to its liking, but instead to assure itself that the Commission has given reasoned consideration to each of the pertinent factors.

In syllabus point two of *Chesapeake and Potomac Telephone Company v. Public Service Commission,* 171 W.Va. 494, 300 S.E.2d 607 (1982), we explained that "[t]his Court will not substitute our judgment for that of the Public Service Commission on controverted evidence." We emphasized that "[t]his does not mean that this Court will not make a searching and careful inquiry into the facts, but only that we will not substitute our judgment for that of the Commission." *Id.* at 488, 300 S.E.2d at 611.

■ This matter presents a unique situation in which two separate requests were made for territory no longer being served by Hairston. As the Appellant underscores, the service initiated by Morgan prior to the PSC's consideration of the formal transfer from Hairston to Morgan was not PSC approved. In the February 6, 1996, order transferring authority to Morgan, the PSC states, "Our decision to approve the transfer in this case has not been influenced by the fact that Morgan assumed responsibility for a large part of Hairston territory after Hairston ceased operations." The PSC was simply presented with two choices: (1) approval of a transfer from Hairston to Morgan, as proposed by both Hairston and Morgan, or (2) approval of an application for amendment of the Appellant's certificate to include the area served by Hairston. The PSC recog-

nized Morgan's initially unapproved service to Hairston customers, yet the PSC concluded that Morgan was the appropriate recipient of the authority formerly enjoyed by Hairston. Upon consideration of this matter, we do not find that conclusion to be unreasonable.

Based upon the foregoing, we affirm the decision of the Public Service Commission.

Affirmed.