412 S.E.2d 481

**WEST VIRGINIA AAA STATEWIDE ASSOCIATION, Intervenor Below, Appellant,**

v.

**PUBLIC SERVICE COMMISSION OF WEST VIRGINIA**

and

**West Virginia Towing and Recovery Association, Applicant Below, Appellees.**

**No. 19941.**

Supreme Court of Appeals of West Virginia.

Submitted May 7, 1991.

Decided Dec. 11, 1991.

John J. Cowan, Charleston, for appellant.

Thornton Cooper, Deputy Director, Transp. Div., Public Service Com'n, Charleston, for appellees.

WORKMAN, Justice:

The West Virginia AAA Statewide Association ("AAA")[1] appeals from an order entered by the Public Service Commission ("PSC") on October 22, 1990, which directed wrecker operators to cease and desist from discounting any portion of their rates on file with the PSC through oral or written agreements. At issue are certain "form" agreements executed by the Southern West Virginia Auto Club ("SWVAC") and twenty-one West Virginia wrecker operators which provide that the SWVAC will receive as compensation for several enumerated services, twenty, thirty, or forty percent of the revenues received by a wrecker operator from calls generated by AAA. Having reviewed the facts of this case in conjunction with W.Va.Code § 24A–2–4 (1986), which prohibits discounts, we affirm the order of the PSC.

The underlying motor carrier proceeding began on April 22, 1985, with a petition filed by appellee West Virginia Towing and Recovery Association ("WVTRA") through which an increase in rates applicable to the wrecker industry as a whole was requested. Appellant became a party to this proceeding through the granting of its motion to intervene. Following no less than nine days of hearings on the rate increase issue as well as the legality of the AAA contracts, the administrative law judge ("ALJ") issued his findings on December 28, 1988, which included the recommendation that a general statewide rate increase be granted to all wrecker operators choosing to adopt the new rates. Also included in this order was a finding that the method by which SWVAC charged certain wrecker companies for its services constituted an illegal "volume discount."[2] By order dated February 5, 1990, the PSC affirmed the ALJ's order of December 28, 1988. Following the denial of appellant's petition for reconsideration, AAA appealed to this Court.

■ The only assignment of error which we will address concerns whether the PSC erred in prohibiting wrecker operators from paying for AAA services through a contractual agreement which required the operators to charge fees for services provided to AAA customers at rates below those on file with the PSC. Appellant does not have standing to raise the remaining assignments of error as AAA lacks a legally protectable and tangible interest at stake pertaining to those matters and is therefore not the proper party to raise those assignments.[3] See Snyder v. Callaghan,

---

1. The West Virginia AAA Statewide Association is an association of the nine West Virginia automobile clubs affiliated with the American Automobile Association.

2. The ALJ order dated December 28, 1988, includes the following findings:

   No. 41. The only one of the eight (8) services listed in Paragraph 3 of each 'Agreement' that substantially induced each wrecker operator to enter into said Agreement to pay SWVAC a certain percentage of towing revenues was the service listed in Paragraph 3(b), which is, in effect, a promise by SWVAC to increase the volume of towing business flowing to said operator....

   ....

   No. 43. SWVAC has been engaging in practice whereby it receives a volume discount from each of these wrecker operators.

3. The other assignments of error raise, with one exception, procedural concerns regarding the rate increase. Because appellant is not an entity who is subject to the tariffs at issue, AAA does not have standing to raise procedural issues pertaining to a PSC-administered rate increase.

   Appellant also questions the authority of the PSC to prohibit the fee arrangement established contractually between SWVAC and various wrecker operators when no individual wrecker operators were made a party to this proceeding. Appellant's reliance on *Virginia Elec. & Power Co. ("VEPCO") v. Public Serv. Comm'n*, 162 W.Va. 202, 248 S.E.2d 322 (1978), as support for this position is misplaced because that decision mandated that a hearing which included the utility, VEPCO, be held prior to PSC revision of the utility's tariff. As contrasted to *VEPCO*, a hearing did occur in this case which included via the involvement of WVTRA, the seventy-two wrecker operators who belong to that association. Appellant's reliance on *Kisner v. Public Serv. Comm'n*, 163 W.Va. 565, 258 S.E.2d 586 (1979) is similarly incorrect.

168 W.Va. 265, 275, 284 S.E.2d 241, 248 (1981) (citing *Shobe v. Latimer,* 162 W.Va. 779, 253 S.E.2d 54 (1979)).

█ The statutory provision cited by both the ALJ and the PSC in striking down the contractual arrangements between AAA and certain wrecker operators is W.Va.Code § 24A–2–4. That statute provides that:

> All rates, fares and charges made by any common carrier by motor vehicle shall be just and reasonable, and shall not be unlawfully discriminatory, prejudicial nor preferential. *No such carrier shall charge, demand, collect, or receive a greater or less or different remuneration for the transportation of passengers or property, or for any service in connection therewith, than the rates, fares, and charges which have been legally established and filed with the commission; nor shall any such carrier refund, remit, discount or rebate in any manner or by any device any portion of the rates, fares, and charges required to be collected by the tariffs on file with or ordered by the commission.*

*Id.* (emphasis supplied).

Appellant contends that the contracts which it entered into with certain wrecker operators do not entail any type of discount or rebate of rates based on its position that certain services were provided in exchange for the reduced rates. Those services included an "800" number plus a 24 hour answering service for AAA members; dispatching services; use of AAA emergency road service signs and insignia; free illustrated towing manuals; unlock tools; equipment catalogs; billing/invoice forms; and management consulting services upon request. In exchange for these services, the contracts between SWVAC and various wrecker operators provided that SWVAC would receive a reduction in fees for both towing and road service based on a negotiated percentage basis which was typically twenty, thirty, or forty percent.

After hearing all the evidence concerning the eight delineated services which AAA points to as a means of negating the existence of any discount, the ALJ found that of those eight services only one "substantially induced each wrecker operator to enter into" their respective contracts.[4] The inducement, according to the ALJ, was the SWVAC's promise to increase the wrecker operator's volume of towing business. Based on this finding, the ALJ further concluded that SWVAC "has been engaging in practice whereby it receives a volume discount from each of these wrecker operators."

In unmistakable terms, W.Va.Code § 24A–2–4 prohibits any refunds, discounts, or rebates "of the rates, fares, and charges required to be collected by the tariffs on file with or ordered by the commission [PSC]." No matter how you view the billing arrangement at issue between the signatories to the SWVAC agreements, the inevitable conclusion is that both on paper and in practice, the end result was a discount. To illustrate, an individual operator would submit a towing bill not to the AAA club member who received the towing services but directly to the SWVAC. The SWVAC determined the amount it would remit in payment for the bill by deducting the contractual percentage from the amount billed. For example, if the fee was forty-five dollars and the agreed-upon percentage was forty percent, the SWVAC would reduce its payment by eighteen dollars and remit only twenty-seven dollars in full payment for the wrecker services. Through this procedure, the wrecker operators were indirectly accomplishing what the statute proscribes.

Under our analysis of this case, a contractual arrangement whereby an AAA automobile club agrees to refer its custom-

---

Individual wrecker operators who felt aggrieved by the PSC order at issue were entitled to seek judicial review pursuant to W.Va.Code § 24–5–1 (1986). The record indicates that no individual wrecker operators chose to avail themself of this method of appeal. Appellant simply does not have standing to raise issues on behalf of the affected wrecker operators.

4. The ALJ found that with regard to the other seven services promised in the agreements, they "are either (1) of little value to the wrecker operator; (2) of no value to the wrecker operator; or (3) of greater value to SWVAC and its members than to the operator entering into the agreement."

ers to a particular wrecker operator and in exchange for this service, as well as certain other services, obtains a fixed percentage deduction in fees constitutes an illegal discount under W.Va.Code § 24A–2–4. The statute mandates that the PSC-controlled rates for wrecker operators are not subject to discount or rebate "in any manner or by any device." W.Va.Code § 24A–2–4. What is occurring pursuant to contract, as the ALJ correctly identified, is a "volume discount." Appellant's attempt to disguise the discounted fees it paid by pointing to the eight services which it agreed to provide as the quid pro quo for the wrecker operators entry into the AAA contracts did not fool the PSC and neither does it deceive this Court. Even assuming, arguendo, that those services were in fact of value to the wrecker operators and did in fact serve as consideration for executing the SWVAC contracts, nonetheless, a fee which is less than that on file with the PSC by the respective operators was ultimately being paid. Since the statute both requires the charging of the rates on file and prohibits discounts "in any manner or by any device," we can reach only one possible conclusion which is that a statutorily-prohibited discount has been occurring through this practice of reducing fees by a contractually agreed-upon percentage.

The objective sought through prohibiting discounts of the rates on file with the PSC "in any manner or by any device" is to prevent price discrimination. Absent an enforceable ban on discounts such as that at work here, non-AAA club members might be forced to subsidize AAA members. Subsidization results because the wrecker operator must resort to overcharging customers who are not AAA members to offset the discounts given to the AAA members.[5]

Whether or not subsidization eventually occurs, the practice of discounting fees is clearly contrary to the underlying statutory scheme of "rendering stabilized service at just and reasonable rates." W.Va. Code § 24A–1–1 (1991). This conclusion is buttressed by a recent United States Supreme Court decision which applied statutory provisions pertaining to a motor com-

mon carrier comparable to those of W.Va. Code § 24A–2–4. In *Maislin Indus. U.S., Inc., v. Primary Steel, Inc.*, 497 U.S. 116, 110 S.Ct. 2759, 111 L.Ed.2d 94 (1990), the Court struck down the Interstate Commerce Commission's ("ICC") policy of permitting a privately negotiated lower rate on grounds that this practice was inconsistent with the Interstate Commerce Act's requirements that published tariffs cannot be deviated from and that rates must be reasonable and nondiscriminatory. Referring to what has come to be known as the "filed rate doctrine," the Court explained the history of subjecting motor common carriers to established tariffs:

> The duty to file rates with the Commission ... and the obligation to charge only those rates ... have always been considered essential to preventing price discrimination and stabilizing rates. 'In order to render rates definite and certain, and to prevent discrimination and other abuses, the statute require[s] the filing and publishing of tariffs specifying the rates adopted by the carrier, and ma[kes] these the *legal* rates, that is, those which must be charged to all shippers alike.'

*Id.* 110 S.Ct. at 2766 (quoting *Arizona Grocery Co. v. Atchison, T. & S.F. Ry. Co.*, 284 U.S. 370, 384, 52 S.Ct. 183, 184, 76 L.Ed. 348 (1932)). Describing the discrimination sought to be avoided by requiring compliance with published rates, the Court noted that the ICC had

> itself found [that] 'past experience shows that billing clerks and other agents of carriers might easily become experts in the making of errors and mistakes in the quotation of rates to favored shippers, while other shippers, less fortunate in their relations with carriers and whose traffic is less important, would be compelled to pay the higher published rates.'

110 S.Ct. at 2766–67 (quoting *Poor v. Chicago, B. & Q.R. Co.*, 12 ICC 418, 421 *Grain Co.* (1907)).

Consistent with this historical rationale, the PSC order directing the wrecker operators to cease and desist from the practice of discounting fees was predicated on the

---

**5.** The issue of subsidization presumes of course that the discounted fee is set below actual cost.

objectives of statutory compliance and avoiding discriminatory treatment, as the following language demonstrates: "The Commission agrees that approved rates are the only acceptable basis for charging customers of regulated motor carriers. To conclude otherwise would clearly violate *West Virginia Code* § 24A–2–4 and would illegally condone unreasonable discriminatory actions by regulated entities."

Rate differentials for a specialized group of customers such as AAA club members are not *per se* prohibited. The PSC explained in its final order that motor carriers such as wrecker operators can seek different rates for different customers or customer classes:

> This does not mean that rate differentials between customers, or customer classes, are prohibited, either by law or policy of this Commission. It has been long recognized that rate differentials between different classes of customers which are served under dissimilar circumstances may be justified. However, any such differentials must be subject to approval by this Commission. Likewise, the terms and conditions of service that are used to aggregate customers into differing rate categories must be filed with the Commission and applied by the regulated entities uniformly and without preference or discrimination. The evidence in this case, however, shows that the carriers currently providing special rates or discounts to AAA, or similar auto clubs, are not doing so under terms, conditions or rates approved by, and on file with, this Commission. Instead, they are exercising independent judgment to offer rebates, or reductions in rates, in direct violation of West Virginia Statute.

As the PSC order makes clear, wrecker operators are free to apply for a rate differential for AAA customers. *See, e.g., Oklahoma Div. AAA v. Corporation Comm'n,* 550 P.2d 932 (Okla.1976). Absent PSC approval of such a rate differential, however, the wrecker operators are required to charge all customers, including SWVAC, the rates on file with the PSC *and* to receive payment for services rendered without an intervening discount being applied to the rates charged.

There is apparently yet another way to avoid this discount problem. The briefs suggest that the SWVAC could enter into a contract with wrecker operators that provides for a flat fee in exchange for the same services which are provided for under the original contracts. The parties seem to agree that a flat fee arrangement would not violate the statute as the prohibition at issue pertains only to discounting fees. West Virginia Code § 24A–2–4 does not prevent AAA from charging a fee for services rendered. It merely prohibits the use of any arrangement such as that previously employed by SWVAC whereby the fee for a service is remitted by discounting a PSC-regulated tariff. Whether the wrecker operators would be willing to agree to such an arrangement is unknown, but so long as any fee agreement operates independently of the tariff schedule filed with the PSC by the respective wrecker operators, statutory violation could be eliminated.

For the foregoing reasons, the decision of the PSC is hereby affirmed.

Affirmed.