426 S.E.2d 528

**Marshall COX, An Individual, d/b/a Harris Transfer; and Timothy Callison, d/b/a Bridgeport Paving and Excavating, Plaintiffs Below, Appellants,**

**v.**

**PUBLIC SERVICE COMMISSION OF WEST VIRGINIA, and Bridgeport Disposal, Inc., a Corporation, Defendants Below, Appellees.**

**BROWNING–FERRIS INDUSTRIES OF WEST VIRGINIA, Plaintiff Below, Appellant,**

**v.**

**PUBLIC SERVICE COMMISSION OF WEST VIRGINIA, and Bridgeport Disposal, Inc., a Corporation, Defendants Below, Appellees.**

Nos. 21216, 21217.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 23, 1992.

Decided Dec. 16, 1992.

Charlotte R. Lane, Dodson, Riccardi & Lutz, Charleston, for Harris Transfer and Bridgeport Paving & Excavating, appellants in No. 21216.

Samuel F. Hanna, Hanna & Hanna, Charleston, for Browning–Ferris Industries of West Virginia, appellant in No. 21217.

Richard M. Allen, Charleston, for Public Service Com'n of West Virginia, appellee in Nos. 21216 & 21217.

Charles D. Perfater, Charleston, for Bridgeport Disposal, Inc., appellee in Nos. 21216 & 21217.

PER CURIAM:

These two cases present appeals from final orders of the Public Service Commission (PSC). In No. 21216, Harris Transfer and Bridgeport Paving and Excavating (Bridgeport Paving) are appellants. In No. 21217, Browning–Ferris Industries of West Virginia (Browning–Ferris) is the appellant. The PSC and Bridgeport Disposal, Inc. are appellees in both cases.

I.

The record in this case indicates the following pertinent facts, as set forth in the PSC's order as well:

A. *No. 21216*

On August 4, 1989, Bridgeport Disposal, a certificated common carrier that hauls trash and the complainant in this case, filed a complaint against Harris Transfer, alleging that Harris Transfer illegally permitted Bridgeport Paving to assume operation under the Harris Transfer certificate, and that Bridgeport Paving was operating trash hauling business at Meadowbrook Mall without a proper certificate.

A contract for trash hauling services existed between Bridgeport Disposal and Meadowbrook Mall, until July, 1989, when such contract was terminated by Meadowbrook Mall. Between June and August, 1989, Timothy Callison, d/b/a Bridgeport Paving, began negotiating with representatives of Meadowbrook Mall over assuming trash hauling services at the mall.

Callison also began negotiating with Marshal Cox, d/b/a Harris Transfer, over the purchase of Harris Transfer's common carrier certificate. An application was then made to transfer Harris Transfer's common carrier certificate to Bridgeport Paving, but this application was subsequently withdrawn. *See W. Va. Code*, 24A–2–5(c) [1980]. However, in expectation of the transfer of the common carrier certificate, Bridgeport Paving placed an advertisement in the "yellow pages" of a local telephone directory, holding itself out as a provider of trash hauling services.

Bridgeport Paving then executed a contract with Meadowbrook Mall to provide trash hauling services, although it did not have the authority to provide such services. Several trash containers were placed at the mall by Bridgeport Paving's employees.

Following a directive from the PSC to remove the trash containers, Bridgeport Paving and Harris Transfer entered into a verbal agreement whereby Harris Transfer would transport trash containers from the mall. Additionally, Bridgeport Paving sold seven containers and leased another to Harris Transfer.[1]

It is also evident from the record that Harris Transfer's billing was processed on the computer at Bridgeport Paving's office, although Harris Transfer did compensate the secretary at Bridgeport Paving who performed such processing. Furthermore, Harris Transfer's drivers, although employed by Harris Transfer, wore Bridgeport Paving uniforms. Other employees appeared to share duties for both companies as well.

B. *No. 21217*

On May 3, 1990, Bridgeport Disposal filed another complaint against Harris

---

1. The sale and lease agreements were filed with the PSC.

Transfer and Browning–Ferris, alleging that Harris Transfer and Browning–Ferris had entered into a cooperative arrangement that constituted a *"de facto* merger." Specifically, the agreement between Harris Transfer and Browning–Ferris provided for the lease of "roll-off" trash container service to the Kroger Company. Browning–Ferris, however, did not have the authority to provide such service.

Following the filing of the complaint by Bridgeport Disposal, the Kroger Company leased a roll-off container from Browning–Ferris, and then the Kroger Company entered into a contract with Harris Transfer for the removal of trash from this particular roll-off container.[2]

### C.

The two cases were consolidated. On May 8, 1991, the administrative law judge entered its recommended decision, dismissing the complaint against the appellants, and finding that no *de facto* merger had been engaged in by Harris Transfer, nor was Harris Transfer's certificate dormant. On August 20, 1991, the PSC reversed the administrative law judge's decision. On March 6, 1992, the PSC entered a final order denying a petition for reconsideration and upholding its previous reversal of the administrative law judge's recommended decision. It is from the PSC's order that this appeal ensued.

### II.

■ We first dispose of the less significant issues raised by Harris Transfer and Bridgeport Paving, the appellants in No. 21216.

The appellants first contend that the PSC's order constituted a "summary reversal" without adequate reasoning. However, our review of that order supports the contention of Bridgeport Disposal and the PSC, that the order contains an exhaustive analysis and ample reasoning.

The appellants also contend the PSC erred in declining to consider Bridgeport Paving's *memorandum of law* in support of its petition for reconsideration. The petition for reconsideration was filed on August 30, 1991, ten days after the PSC's August 20, 1991 order, which reversed the administrative law judge's recommended decision.[3]

As noted, the memorandum of law in support of its petition for reconsideration was filed on December 2, 1991. In its March 6, 1992 order, the PSC denied Bridgeport Paving's petition for reconsideration, thus declining to consider the memorandum of law.

The appellants maintain that because the PSC's order affirming the August 20, 1991 order was not entered until March 6, 1992, the filing of the supporting memorandum on December 2, 1991 did not delay the ultimate decision, and therefore, the PSC should have taken the memorandum into consideration.

Rule 19.1 of the rules and regulations that govern the organizational operations of the PSC provides, in pertinent part:

> Applications for ... rehearing or reargument after decision, must be made by petition, duly verified, within ten (10) days after the date of such closing of testimony, final submission *or within ten (10) days after the final order* was

---

**2.** The complaint also alleged that Harris Transfer had also illegally merged with Enterprise Sanitation to provide residential services. However, Enterprise Sanitation is not an appellant herein.

**3.** A litany of filings took place following the August 30, 1991 filing of a petition for reconsideration:

On September 13, 1991, Bridgeport Disposal filed a reply to the petition for reconsideration. On October 2, 1991, Meadowbrook Mall, as an intervenor, filed a response to Bridgeport Disposal's reply.

On October 31, 1991, Bridgeport Paving filed a *motion to file* a memorandum of law in support of its petition for reconsideration.

On November 6, 1991, the PSC staff filed a response to Bridgeport Paving's motion, and on November 14, 1991, Bridgeport Disposal did the same.

On December 2, 1991, Bridgeport Paving filed its memorandum of law in support of the petition for reconsideration, despite the fact that the PSC had not ruled on Bridgeport Paving's motion to do so.

mailed by the Commission to the parties of record, as the case may be. Such petition *shall state specifically the grounds relied upon,* and shall be filed with the Commission and a copy served by the petitioner upon each adverse party, or his attorney, who appeared at the hearing, or oral argument, if any, or on brief.

(emphasis supplied) [4]

Accordingly, in light of the clarity of the above-quoted rule, it is evident that the PSC did not commit error in declining to consider the memorandum of law which supported the appellants' petition for reconsideration.

## III.

■ We now turn to the more significant issues that are presented in this case.

### A. *Merger*

*W. Va. Code,* 24A–5–4 [1937] provides, in relevant part:

> (a) It shall be lawful, under the conditions specified below, but under no other conditions, *for two or more motor carriers to consolidate or merge their property, or any part thereof, into one corporation for the ownership, management, and operation of the properties theretofore owned, managed, and operated separately; or for any such motor carrier or two or more such carriers jointly, to purchase, lease or contract to operate the properties, or any part thereof, of another such carrier* [.]

> (b) When a consolidation, merger, purchase, lease, operating contract, or acquisition of control is proposed under this section the carrier, or carriers, or person, seeking authority therefor shall present an application to the commission[.]

> (c) Every consolidation, merger, purchase, lease, operating contract, or acquisition of control, or other transaction referred to in this section made otherwise

than as hereinabove provided, *shall be void.*

(emphasis supplied)

#### 1. *No. 21216*

The PSC asserts that it is clear that Harris Transfer and Bridgeport Paving have illegally merged operations in violation of this statutory provision. *See supra* section I.A. In support of this assertion, the PSC points to a number of facts. For example: both Marshall Cox, the proprietor of Harris Transfer, and Timothy Callison, the proprietor of Bridgeport Paving, are represented by the same counsel in these proceedings; only Callison entered into a trash collection contract to service Meadowbrook Mall, when the certificate for such authority is possessed by Harris Transfer, *see* section I.A., *supra;* only Callison went to the headquarters of Meadowbrook Mall to finalize the contract provisions; only Bridgeport Paving had sufficient equipment to provide trash collection service at Meadowbrook Mall; only employees of Bridgeport Paving delivered trash dumpsters to Meadowbrook Mall; Bridgeport Paving's trucks were seen, as part of a PSC investigation, hauling trash from the Meadowbrook Mall; Callison placed an advertisement in the "yellow pages" of a local telephone directory stating that Bridgeport Paving had authority to haul trash; the PSC's investigator was told by Cox to contact Callison concerning the trash hauling service at Meadowbrook Mall.

In fact, it was noted by the PSC, in its order, that "[u]pon review of the evidence, it is clear the management and operations of Harris Transfer Company and Bridgeport Paving have become so blurred that the two entities are virtually indistinguishable."

The appellants Harris Transfer and Bridgeport Paving, while not specifically disputing these factual allegations, contend that their "affiliation" does not constitute an illegal merger because they argue that *W. Va. Code,* 24A–5–4 [1937] applies only to two *regulated* carriers. Because Bridge-

**4.** *See W. Va. Code of State Rules,* § 150–1–19 (1987).

port Paving is a *non-regulated* carrier, it is contended by the appellants that this statutory prohibition has no force to this case. We do not agree.

*W.Va.Code*, 24A–5–4 [1937] refers to consolidations and mergers between "two or more motor carriers." Nothing in this statutory provision limits its effect to *regulated* motor carriers.

Moreover, *W.Va.Code*, 24A–1–2 [1991] defines "motor carrier." That section provides, in pertinent part: "As used in this chapter: .... (7) 'Motor carrier' includes both a common carrier by motor vehicle and a contract carrier by motor vehicle[.]" A "common carrier by motor vehicle" is *any* person who undertakes, whether directly or by lease or any other arrangement, to transport passengers or property, or any class or classes of property, for the general public over the highways of this state by motor vehicles for hire, whether over regular or irregular routes, including such motor vehicle operations of carriers by rail, water or air and of express or forwarding agencies, and leased or rented motor vehicles, with or without drivers[.]

*W.Va.Code*, 24A–1–2 [1991] (emphasis supplied). Again, nothing in this definitional section indicates that only *regulated* carriers are subject to the provisions of *W.Va. Code*, 24A–5–4 [1937].

### 2. *No. 21217*

As set forth in section I.B., *supra*, the appellant Browning–Ferris leased a "roll-off" trash container to the Kroger Company, a grocery store in Clarksburg. This store is outside of any service area for which Browning–Ferris holds a certificate. Rather, Harris Transfer holds the certificate for this particular area, and therefore is responsible for the trash hauling service at this location.

The PSC asserts that this is a violation of *W.Va.Code*, 24A–5–4 [1937], quoted *supra*, which prohibits mergers of such motor carriers. In its order, the PSC stated that "[b]ased on the evidence, the Commission is ... of the opinion that the arrangements between BFI, Kroger Company and Harris Transfer Company constitute a de facto merger and consolidation of operations between BFI and Harris Transfer Company."

The appellants Harris Transfer and Browning–Ferris, on the other hand, contend that the PSC is without jurisdiction over the leasing of "roll-off" containers when the carrier does not provide trash hauling service to the customer.

*W.Va.Code*, 24A–2–4 [1937] provides, in part, that "[n]o such carrier shall charge, demand, collect, or receive a greater or less or different remuneration for the transportation of passengers or property, *or for any service in connection therewith*, than the rates, fares, and charges which have been legally established and filed with the commission[.]"   (emphasis supplied)

Certainly, the lease of "roll-off" containers to the Kroger Company would constitute a "service in connection" with the trash hauling operation under *W.Va.Code*, 24A–2–4 [1937].

Furthermore, as quoted above, *W.Va.Code*, 24A–1–2(2) [1991] sets forth the definition of "common carrier by motor vehicle." Because Browning–Ferris transports the roll-off containers to the Kroger Company, then it is a "common carrier by motor vehicle."

### 3. *Standard of Review*

The following principle is well established by this Court:

> In reviewing a Public Service Commission order, we will first determine whether the Commission's order, viewed in light of the relevant facts and of the Commission's broad regulatory duties, abused or exceeded its authority. We will examine the manner in which the Commission has employed the methods of regulation which it has itself selected, and must decide whether each of the order's essential elements is supported by substantial evidence. Finally, we will determine whether the order may reasonably be expected to maintain financial integrity, attract necessary capital, and fairly compensate investors for the risks they have assumed, and yet provide ap-

propriate protection to the relevant public interests, both existing and foreseeable. The court's responsibility is not to supplant the Commission's balance of these interests with one more nearly to its liking, but instead to assure itself that the Commission has given reasoned consideration to each of the pertinent factors.

Syl. pt. 2, *Monongahela Power Co. v. Public Service Comm.*, 166 W.Va. 423, 276 S.E.2d 179 (1981).

In this case, we do not believe that the PSC, with its broad regulatory duties, abused or exceeded its authority.

With respect to No. 21216, *see* section III.A.1., *supra*, it is clear that *W.Va.Code*, 24A–5–4 [1937] does not distinguish between regulated and non-regulated carriers.

With respect to No. 21217, *see* section III.A.2., *supra*, the lease of "roll-off" trash containers is clearly a "service in connection" with the trash hauling service provided by the certificated carrier. Consequently, such an arrangement would constitute an illegal merger.

Accordingly, the final order of the Public Service Commission on the issue of merger is affirmed.

### B. *Dormancy*

Next, we consider the issue of dormancy in No. 21216. Specifically, the PSC concluded:

Aside from Harris Transfer Company's recent expansion of residential and commercial service through unlawful affiliation with named Defendants and Enterprise Sanitation, Inc., Harris Transfer Company's operations have been minimal, irregular and virtually nonexistent resulting in dormancy of most of the authority under [its certificate], except for Gabriel Plaza and Hills Plaza, where Harris Transfer Company has engaged in substantial lawful commercial operations under its certificate.

The appellant, Harris Transfer, contends that the issue of dormancy is not a proper issue to be raised in a *complaint* case, such as this case, but rather, may only be raised when determining "public convenience and necessity" for showing "need" in a new certificate case, or a case where a certificate is sought to be transferred.

The appellant suggests that under *W.Va. Code*, 24A–2–5 [1980], which sets forth the requirement for a certificate of convenience and necessity, there is a presumption that overlapping certificate areas fulfill the requirement of public convenience and necessity. *See also* syl. pt. 4, *Stowers & Sons Trucking Co., Inc. v. Public Service Commission*, 182 W.Va. 374, 387 S.E.2d 841 (1989). Therefore, the appellant contends that it follows that the issue of dormancy should *only* be a consideration when examining the level of service for *new* entrants or when a certificate is to be transferred.

However, although the appellant may have inferred that dormancy may only be considered in a new or transferred certificate case, neither the legislature nor this Court has ever set forth such a requirement. In fact, if this Court has implied anything with respect to this issue, it has been just the opposite. In *Chabut v. Public Service Commission*, 179 W.Va. 111, 114, 365 S.E.2d 391, 394 (1987), the Court stated:

The concept of 'dormancy' relates to the failure of a certificate holder to operate for a period of time under the certificate. This can give rise to several adverse consequences to the certificate holder such as a cancellation of the certificate or, in the event of a transfer, a finding that it is not transferable because of nonuse.

Accordingly, there is nothing erroneous about the PSC ordering that a certificate is dormant in a complaint case.

As for the facts in this case, that is, whether the evidence supports the PSC's order that the appellant Harris Transfer's certificate was dormant, the record contains ample evidence to support the PSC's order.[5]

5. The Harris Transfer (appellant herein) certifi-

cate covers the City of Clarksburg and a ten

As pointed out by the PSC, Harris Transfer's residential service, although existent, has been limited to only "on call" trash service for just sixteen customers in Clarksburg and Bridgeport, six of whom were provided regular trash service by the City of Clarksburg. Furthermore, between 1988 and 1990, the extent of Harris Transfer's commercial service consisted of trash service to "non-anchor" mall stores at Meadowbrook Mall, and customers at Gabriel Plaza and Hills Plaza. Based upon these facts, the PSC found that "Harris Transfer Company's operations within its area of certificated authority are minimal, irregular, and virtually nonexistent with respect to residential and commercial service, except for substantial commercial service provided to non-anchor Mall stores at Meadowbrook Mall and Gabriel Plaza and Hills Plaza."

Based upon the above recitation of evidence before the PSC, it is clear that its finding of dormancy is well supported by the record.[6]

■ " 'A final order of the Public Service Commission, based upon findings not supported by evidence, or based upon a mistake of law, will be reversed and set aside by this Court upon review.' Point 3, Syllabus, *Atlantic Greyhound Corporation v. Public Service Commission of West Virginia*, 132 W.Va. 650 [54 S.E.2d 169]." Syl., *United Fuel Gas Co. v. Public Service Commission*, 143 W.Va. 33, 99 S.E.2d 1 (1957).

Accordingly, because the final order of the PSC in this case is supported by the evidence, it is affirmed on the issue of dormancy.

### C. Rebate

Finally, the PSC, in its order, concluded that a $1,000 "service fee" which is charged by Meadowbrook Mall to the common carriers that provide trash hauling service constitutes an illegal rebate in violation of *W.Va.Code*, 24A–2–4 [1937]. The pertinent part of that section provides: "[N]or shall any [common] carrier [by motor vehicle] refund, remit, discount or rebate in any manner or by any device any portion of the rates, fares, and charges to be required to be collected by the tariffs on file with or ordered by the commission."

The evidence in the record of this case shows that Bridgeport Disposal was charged a monthly "service fee" of $350 by the Meadowbrook Mall which supposedly covered the use of electricity and other services used on the mall's property. The evidence also demonstrates that Bridgeport Disposal's contract with the mall was not renewed because it refused to agree to a substantial increase in this "service fee" by the mall.[7]

Thereafter, Bridgeport Paving entered into a contract with Meadowbrook Mall to haul trash, and, as part of that contract, agreed to pay a $1000 per month "service fee."

Recently, in *West Virginia AAA Statewide Assoc. v. Public Service Commission*, 186 W.Va. 287, 412 S.E.2d 481 (1991), this Court, under *W.Va.Code*, 24A–2–4 [1937], invalidated an arrangement whereby an automobile club was given discounts by wrecker services in exchange for referrals. Although the appellants in that case argued that such an arrangement does not constitute a discount or rebate of rates because "certain services were provided in exchange for the reduced rates[,]" 186 W.Va. at 289, 412 S.E.2d at 483, we disagreed, pointing out that "[a]bsent PSC ap-

---

mile radius thereof, excluding the City of Bridgeport; the Bridgeport Disposal (appellee herein) certificate covers the City of Bridgeport and a five mile radius thereof.

**6.** The appellant Harris Transfer also maintains that under *W.Va.Code*, 24A–7–1 [1947], it is entitled to "make reparations for the injury alleged to have been done or to correct the practice complained of and obey the law and discharge its duties," so that it may be "relieved of liability to the complainant for the particular violation of law or duty[.]" However, the appellees point out that following the filing of the complaint in this case, there was ample time afforded the appellant Harris Transfer to make reparations so as to activate the certificate.

**7.** Mr. Timothy C. McIntyre, the vice president and general manager of Bridgeport Disposal, testified that an increase in the "service fee" would have to be "passed on" to the mall tenants, and that he was not willing to do that.

proval of such a rate differential ... the wrecker operators are required to charge all customers ... the rates on file with the PSC *and* to receive payment for services rendered without an intervening discount being applied to the rates charged." 186 W.Va. at 291, 412 S.E.2d at 485 (emphasis in original).

However, when these cases were initially presented to this Court upon petitions for appeal, we entered an order with respect to the petition filed on behalf of Meadowbrook Mall, specifically, remanding this issue to the PSC "for a hearing and for entry of an appropriate order approving a fee reflecting the petitioner's [Meadowbrook Mall's] actual costs rather than the $1,000.00 flat fee, pursuant to this Court's holding in *West Virginia AAA Statewide Association v. Public Service Commission of West Virginia* ... an[d] the agreement by the parties at the hearing on the petition in this matter." (citation omitted)

Accordingly, this matter has already been disposed of by this Court, and we need not address it herein.

### IV.

In accordance with the foregoing, the March 6, 1992 order of the Public Service Commission is affirmed.

Affirmed.