# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

## September 2019 Term

_____

No. 19-0436

_____

**FILED**
**November 20, 2019**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**TRULARGO, LLC,**
Petitioner

**V.**

**PUBLIC SERVICE COMMISSION OF WEST VIRGINIA; AND
ALLIED WASTE SERVICES OF NORTH AMERICA, LLC,
DOING BUSINESS AS REPUBLIC SERVICES OF WEST VIRGINIA,**
Respondents

_____

**Appeal from Public Service Commission of West Virginia
Case No. 18-1130-MC-FC**

**AFFIRMED**

_____

**Submitted:  November 5, 2019
Filed:  November 20, 2019**

John F. Gianola
James A. Gianola
Gianola, Barnum, Bechtel & Jecklin L.C.
Morgantown, West Virginia
Attorneys for the Petitioner

Jessica M. Lane
General Counsel
J. Joseph Watkins
Public Service Commission
of West Virginia
Charleston, West Virginia
Attorneys for the Respondent,

**Public Service Commission
of West Virginia**

**Samuel F. Hanna
Charleston, West Virginia
Attorney for the Respondent,
Republic Services of West Virginia**

**JUSTICE JENKINS delivered the Opinion of the Court.**

**SYLLABUS BY THE COURT**

1. "'"The principle is well established by the decisions of this Court that an order of the public service commission based upon its finding of facts will not be disturbed unless such finding is contrary to the evidence, or is without evidence to support it, or is arbitrary, or results from a misapplication of legal principles." *United Fuel Gas Company v. Public Service Commission*, 143 W. Va. 33[, 99 S.E.2d 1 (1957)].' Syl. Pt. 5, *Boggs v. Pub. Serv. Comm'n*, 154 W. Va. 146, 174 S.E.2d 331 (1970)." Syllabus point 1, *Sierra Club v. Public Service Commission of West Virginia*, 241 W. Va. 600, 827 S.E.2d 224 (2019).

2. "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syllabus point 1, *Smith v. State Workmen's Compensation Commissioner*, 159 W. Va. 108, 219 S.E.2d 361 (1975).

3. "Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation." Syllabus point 2, *Crockett v. Andrews*, 153 W. Va. 714, 172 S.E.2d 384 (1970).

**Jenkins, Justice:**

The petitioner herein, Trulargo, LLC ("Trulargo"), appeals from the April 5, 2019 order of the Public Service Commission of West Virginia ("PSC"). By that order, the PSC found that Trulargo had been unlawfully operating as a common carrier by motor vehicle and required it to cease such activities. On appeal to this Court, Trulargo argues that the PSC erred by determining it to be a common carrier and further improperly regulated its roll-off container rental business and the costs it charges for such service. Both the PSC and the additional respondent herein, Allied Waste Services of North America, LLC, doing business as Republic Services of West Virginia ("Republic"), respond that the PSC order was correctly decided and should be affirmed. Upon a review of the parties' arguments and briefs, the appendix record, and the pertinent authorities, we conclude that the PSC did not err by ruling that Trulargo was operating as a common carrier by motor vehicle and requiring it to cease such operations until it obtains a permit therefore. Accordingly, we affirm the PSC's April 5, 2019 order.

## I.

## FACTS AND PROCEDURAL HISTORY

This case originated when Republic filed a complaint with the PSC alleging that Trulargo was collecting and hauling waste as a common carrier by motor vehicle without possessing a certificate of convenience and necessity from the PSC allowing it to do so. Trulargo is primarily in the business of residential real estate construction and represents that, when it was unable to procure a roll-off container to use for waste

1

generated at its construction jobsites, it purchased its own container. Thereafter, Trulargo indicates that it received inquiries from members of the public regarding the rental of its container, and, as a result, Trulargo purchased several additional roll-off containers to rent to customers. Trulargo further advertised the availability of these containers for rent on the side of the containers, themselves, and on its website.

As part of its standard rental agreement, Trulargo delivered an empty roll-off container to the customer renting it and left the container at the customer's site during the rental period, which was generally one week. At the end of the rental period, Trulargo picked up the container and hauled the customer's contents left therein to a waste disposal site. The rental fee that Trulargo charged its customers was the same price regardless of whether the container was empty or full when Trulargo picked it up. Moreover, the set rental price did not change regardless of the distance Trulargo was required to travel to deliver the rented roll-off container to and retrieve it from a customer.

Following an investigation and a hearing, the PSC adopted the recommended decision of the ALJ, entered February 4, 2019, and issued a Commission Order on April 5, 2019. By that order, the PSC determined that Trulargo is operating as a common carrier by motor vehicle when it rents its containers to customers and hauls away the contents thereof at the end of the rental period when it picks up its roll-off containers. As such, the PSC required "Trulargo, LLC, to cease and desist from

2

operating as a common carrier providing solid waste service within West Virginia until it obtains proper authority from the Commission."[1]  From this decision, Trulargo appeals to this Court.

## II.

## STANDARD OF REVIEW

The case *sub judice* is before this Court on appeal from an order entered by the PSC.  With respect to this Court's review of such decisions, we previously have held:

> "'The principle is well established by the decisions of this Court that an order of the public service commission based upon its finding of facts will not be disturbed unless such finding is contrary to the evidence, or is without evidence to support it, or is arbitrary, or results from a

_____

[1]Following Republic's complaint to the PSC and the commencement of the underlying proceedings, Trulargo filed an application for a certificate of convenience and necessity to enable it to continue renting its roll-off containers to customers as it had been doing, although it repeatedly has denied that it is required to hold such a certificate to continue these activities.  The appendix record contains a copy of the ALJ's March 29, 2019 recommended decision suggesting that such a certificate be denied insofar as other certificate holders adequately provide waste collection services in the designated area, *i.e.* Monongalia County (during the certificate proceedings, Trulargo withdrew its request that the certificate also allow it to operate in Marion, Harrison, Preston, and Taylor Counties when certificate holders in those counties protested).  However, exceptions were taken to that recommended decision, and it does not appear that the PSC's final order as to Trulargo's certificate application has been included in the appendix record. *See generally* Syl. pt. 2, *Charleston Transit Co. v. Pub. Serv. Comm'n*, 142 W. Va. 750, 98 S.E.2d 437 (1957) ("'Where under subsection (a), section 5, article 2, chapter 86, Acts of the Legislature, 1939, a certificate of convenience and necessity is granted a common carrier, to operate over a designated route or routes, regular or irregular, no additional certificate may be granted covering such route or routes, unless the service furnished under the first certificate is found, by the Public Service Commission, to be inadequate or insufficient, and the holder of such certificate first given an opportunity to remedy such service within a reasonable time after such finding.'  Pt. 2, Syllabus, *McKee v. Public Service Commission*, 124 W. Va. 10[, 18 S.E.2d 577 (1942)].").

misapplication of legal principles.' *United Fuel Gas Company v. Public Service Commission*, 143 W. Va. 33[, 99 S.E.2d 1 (1957)]." Syl. Pt. 5, *Boggs v. Pub. Serv. Comm'n*, 154 W. Va. 146, 174 S.E.2d 331 (1970).

Syl. pt. 1, *Sierra Club v. Pub. Serv. Comm'n of W. Va.*, 241 W. Va. 600, 827 S.E.2d 224 (2019).

We further have expounded on the scope of our review as follows:

"The detailed standard for our review of an order of the Public Service Commission contained in Syllabus Point 2 of *Monongahela Power Co. v. Public Service Commission*[ *of West Virginia*], 166 W. Va. 423, 276 S.E.2d 179 (1981), may be summarized as follows: (1) whether the Commission exceeded its statutory jurisdiction and powers; (2) whether there is adequate evidence to support the Commission's findings; and, (3) whether the substantive result of the Commission's order is proper." Syl. Pt. 1, *Cent. W. Va. Refuse, Inc. v. Pub. Serv. Comm'n of W. Va.*, 190 W. Va. 416, 438 S.E.2d 596 (1993).

Syl. pt. 2, *Sierra Club*, 241 W. Va. 600, 827 S.E.2d 224. *See* Syl. pt. 2, *Monongahela Power Co. v. Pub. Serv. Comm'n of W. Va.*, 166 W. Va. 423, 276 S.E.2d 179 ("In reviewing a Public Service Commission order, we will first determine whether the Commission's order, viewed in light of the relevant facts and of the Commission's broad regulatory duties, abused or exceeded its authority. We will examine the manner in which the Commission has employed the methods of regulation which it has itself selected, and must decide whether each of the order's essential elements is supported by substantial evidence. Finally, we will determine whether the order may reasonably be expected to maintain financial integrity, attract necessary capital, and fairly compensate

4

investors for the risks they have assumed, and yet provide appropriate protection to the relevant public interests, both existing and foreseeable. The court's responsibility is not to supplant the Commission's balance of these interests with one more nearly to its liking, but instead to assure itself that the Commission has given reasoned consideration to each of the pertinent factors."). *But see* Syl. pt. 2, *Cox v. Pub. Serv. Comm'n of W. Va.*, 188 W. Va. 736, 426 S.E.2d 528 (1992) (per curiam) ("""A final order of the Public Service Commission, based upon findings not supported by evidence, or based upon a mistake of law, will be reversed and set aside by this Court upon review." Point 3, Syllabus, *Atlantic Greyhound Corporation v. Public Service Commission of West Virginia*, 132 W. Va. 650[, 54 S.E.2d 169 (1949)].' Syl., *United Fuel Gas Co. v. Public Service Commission*, 143 W. Va. 33, 99 S.E.2d 1 (1957)."). Mindful of this standard, we proceed to consider the assigned errors.

## III.

## DISCUSSION

Trulargo assigns three errors to the PSC's order. First, Trulargo contends that the PSC improperly determined it to be a common carrier by motor vehicle. Next, Trulargo argues that the PSC does not have the authority to regulate its roll-off container rental business. Finally, Trulargo challenges the PSC's ability to regulate the costs embedded in the rental fees Trulargo charges when it rents its roll-off containers. We will consider each of these alleged errors.

5

In its first assignment of error, Trulargo denies that it comes within the definition of a common carrier by motor vehicle or that it requires a certificate of convenience and necessity to continue its rental operations. In this regard, Trulargo states that its primary business is container rental, not waste collection, such that it is not illegally hauling trash. Rather, Trulargo asserts that it merely is renting its own containers, collecting its own containers, and emptying its own containers so that they will be ready the next time it needs to use them; such activities, Trulargo argues, are not regulated by the PSC. Moreover, Trulargo contends that it is not in the waste collection business as it does not charge a separate fee for waste collection or removal, hauling, or the amount of waste a customer deposits in its container; rather, Trulargo represents that it charges its rental customers a single rental fee that includes the pickup of the container at the end of the rental period and the disposal of the container's contents. Finally, Trulargo avers that because the containers it is renting, delivering, and collecting are its own property, it is more akin to a private carrier for which activities PSC approval is not needed. Both the PSC and Republic refute this argument and assert that Trulargo's actions place it squarely within the definition of a common carrier by motor vehicle; as such, they argue that Trulargo is required to obtain a certificate of convenience and necessity to continue operating in this capacity.

The pivotal issue in this case is whether Trulargo's operations constitute those of a "common carrier by motor vehicle," as found by the PSC and as argued by

6

Republic, or those of a "private commercial carrier," as propounded by Trulargo.

West Virginia Code § 24A-1-2 (LexisNexis 2018) defines these terms as follows:

> "Common carrier by motor vehicle" means any person who undertakes, whether directly or by lease or any other arrangement, to transport passengers or property, or any class or classes of property, for the general public over the highways of this State by motor vehicles for hire, whether over regular or irregular routes, including such motor vehicle operations of carriers by rail, water or air and of express or forwarding agencies, and leased or rented motor vehicles, with or without drivers[.]

> . . . .

> "Private commercial carrier" means and includes any person who undertakes, whether directly or by lease or other arrangement, to transport property, including hazardous materials as defined in rules and regulations promulgated by the commission, for himself over the public highways of this state, in interstate or intrastate commerce, for any commercial purpose, by motor vehicle with a gross vehicle weight rating of ten thousand one pounds or more, by motor vehicle designed to transport more than fifteen passengers, including the driver; or by any motor vehicle used to transport hazardous materials in a quantity requiring placarding under federal hazardous material regulations as adopted by the commission[.]

W. Va. Code §§ 24A-1-2(2), (13).[2]  The importance of these definitions is the distinct

difference between a common carrier by motor vehicle and a private commercial carrier:

---

[2]Also defined by West Virginia Code § 24A-1-2 (LexisNexis 2018) is the term "contract carrier by motor vehicle."  *See* W. Va. Code § 24A-1-2(3) ("'Contract carrier by motor vehicle' means any person not included in subdivision (2) of this section, who under special and individual contracts or agreements, and whether directly or by lease or any other arrangement, transports passengers or property over the highways in this State by motor vehicles for hire[.]").  The parties do not contend that Trulargo's activities render it a contract carrier.  Neither do the parties suggest that any of the

7

common carriers by motor vehicle are subject to regulation by the PSC, while private commercial carriers are not. *See* W. Va. Code § 24A-2-3 (LexisNexis 2018) ("The commission is vested with power and authority to supervise and regulate *all common carriers by motor vehicle . . . .*" (emphasis added)). As part of such regulation, "[i]t shall be unlawful for any common carrier by motor vehicle to operate within this State without first having obtained from the commission a certificate of convenience and necessity." W. Va. Code § 24A-2-5(a) (LexisNexis 2018). It is undisputed that Trulargo does not possess a certificate of convenience and necessity to conduct the activities that are at issue herein.

Given that our decision of this case turns upon the application of statutory definitions to the facts before us, the rules of statutory construction are instructive to our analysis. "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975). Where the legislative intent is evident and the statutory language is clear, we need only apply the statutory language as written without further interpretation. In other words, "[w]here the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation." Syl. pt. 2, *Crockett v. Andrews*, 153 W. Va. 714, 172 S.E.2d 384 (1970).

exemptions from the motor carrier regulation requirements apply in this case. *See generally* W. Va. Code § 24A-1-3 (LexisNexis Supp. 2019) (listing types of motor vehicles exempted from regulatory requirements).

8

*Accord* Syl. pt. 1, *Dunlap v. State Comp. Dir.*, 149 W. Va. 266, 140 S.E.2d 448 (1965)

("Where the language of a statute is plain and unambiguous, there is no basis for

application of rules of statutory construction; but courts must apply the statute according

to the legislative intent plainly expressed therein."); Syl. pt. 2, *State v. Epperly*, 135

W. Va. 877, 65 S.E.2d 488 (1951) ("A statutory provision which is clear and

unambiguous and plainly expresses the legislative intent will not be interpreted by the

courts but will be given full force and effect.").

In enacting the referenced statutory definitions, the Legislature has

expressly stated its intention for doing so in the introductory section of this chapter of the

West Virginia Code:

> It is hereby declared to be the purpose and policy of
> the Legislature in enacting this chapter to confer upon the
> Public Service Commission of West Virginia, in addition to
> all other powers conferred and duties imposed upon it by law,
> the power, authority and duty to supervise and regulate the
> transportation of persons and property for hire by motor
> vehicles upon or over the public highways of this State so as
> to: (a) Protect the safety and welfare of the traveling and
> shipping public in their use of transportation agencies by
> motor vehicle; (b) preserve, foster and regulate transportation
> and permit the coordination of transportation facilities; (c)
> provide the traveling and shipping public transportation
> agencies rendering stabilized service at just and reasonable
> rates. This chapter shall apply to persons and motor vehicles
> engaged in interstate commerce and to private commercial
> carriers by motor vehicle as defined in section two [§ 24A-1-
> 2] of this article, to the extent permitted by the constitution
> and laws of the United States.

W. Va. Code § 24A-1-1 (LexisNexis 2018). The Legislature's intent in adopting the corresponding language regulating common carriers also is clear: "All common carriers by motor vehicle are hereby declared to be affected with a public interest and subject to the laws of this State now in force or that hereafter may be enacted pertaining to public utilities and common carriers as far as applicable, and not in conflict herewith." W. Va. Code § 24A-2-1 (LexisNexis 2018). Moreover, we previously have considered this definitional language and found it to plainly mean what it says. *See generally Cox v. Pub. Serv. Comm'n of W. Va.*, 188 W. Va. 736, 426 S.E.2d 528 (common carrier by motor vehicle); *Gambino v. Jackson*, 150 W. Va. 305, 145 S.E.2d 124 (1965) (private carrier).

During the underlying administrative proceedings, the ALJ detailed the evidence presented by the parties and the reasoning for its recommended decision finding that Trulargo's actions are those of a common carrier:

> Mr. Goff, Trulargo's owner, admits to leasing roll-off containers to customers in West Virginia and, at the end of the lease period, picking up the waste laden containers and disposing of the waste at the Complainant's [Republic's] transfer station in Morgantown. West Virginia Code §24A-1-2(2) provides, to wit: a "common carrier by motor vehicle" means any person who undertakes, whether directly or by lease or any other arrangement, to transport passengers or property, or any class or classes of property, for the general public over the highways of this state by motor vehicles for hire, whether over regular or irregular routes, including such motor vehicle operations of carriers by rail, water or air and of express or forwarding agencies, and leased or rented motor vehicles, with or without drivers. Thus, by Mr. Goff's own

10

testimony, Trulargo is operating as a common carrier by motor vehicle.

Notwithstanding Mr. Goff's own words, Trulargo attempts to argue it "is in the dumpster rental business, not the waste hauling business." That is clearly not the complete truth. The fact that a disposal fee is imbedded in the lease agreement, regardless of whether it is a poundage fee or mileage fee, is quite telling that the Defendant [Trulargo] is engaged in more than just the "dumpster rental business." Trulargo's customers want solid waste transported away from their location. They "rent" the dumpsters in order to get the solid waste transported away.

The Defendant [Trulargo] also argues that "[t]here is no evidence Trulargo transports passengers or property for the general public" therefore, Trulargo is a "private carrier" and not a "common carrier." Nothing could be further from the truth. Indeed, while Mr. Goff indicated that, "If somebody called Trulargo and said, I have a dumpster that I did not rent from you and I would like it emptied," Trulargo would not do so, that does not mean Trulargo is a "private carrier." The evidence shows Trulargo leases roll-off containers to members of the public, transports such containers to the customers, does not permit others to haul the waste deposited in its containers, hauls the waste to a local transfer station, and charges a fee for hauling and disposing of the waste deposited in its containers. Based on such evidence, Trulargo is engaged in common carrier activity as that term is defined in West Virginia[ Code] §24A-1-2(2). (Marshall Cox v. Public Service Commission, 188 W. Va. 736, 426 S.E.2d 528, 1992 WV LEXIS 268 (1992)[ (per curiam)]). The Defendant's [Trulargo's] argument is meritless.

Finally, West Virginia Code §24A-2-5 provides that all common carriers in this state must obtain Commission authority in the form of a certificate of convenience and necessity to provide trash, rubbish and garbage service. The evidence shows the Defendant [Trulargo] does not have any authority from the Commission whatsoever to provide common carrier service within West Virginia. Accordingly, the Defendant [Trulargo] should be ordered to immediately

11

cease and desist from operating without proper authority from the Commission.

The ALJ then summarized its conclusions of law as follows:

By leasing roll-off containers to members of the public, transporting such containers to the customers, prohibiting others from hauling the waste deposited in its containers, hauling the waste to a local transfer station, and charging a fee for hauling and disposing of the waste deposited in its containers, the Defendant [Trulargo] is engaged in common carrier activity which makes its operation subject to Commission jurisdiction.

W.Va. Code §24A-2-5 requires the Defendant [Trulargo] to obtain Commission authority in the form of a certificate of convenience and necessity to transport trash, rubbish and garbage on an intrastate basis in West Virginia.

Upon Trulargo's exceptions to the ALJ's recommended decision, the PSC similarly found that "[c]ustomers pay money for Trulargo to deliver a container that is used to store solid waste and then remove the container and dispose of any trash that is in it." (Citations omitted). We agree with the ALJ's reasoning and the PSC's adoption of the same.

The key difference between a common carrier and a private carrier is the owner of the property being transported. *See* W. Va. Code §§ 24A-1-2(2), (13). Here, it is undisputed that the contents that are in the roll-off containers when Trulargo picks up its rented containers from a customer are contents that were deposited into the container by *the customer*, not by Trulargo, itself. As such, Trulargo, by picking up its rented containers and transporting the contents to a waste disposal site, is squarely within the

12

definition of a "common carrier by motor vehicle" insofar as it "transport[s] . . . [such] property . . . by motor vehicles for hire" as evidenced by its rental agreement with its customers. Although Trulargo argues that it is a private carrier because it owns the roll-off containers it rents, this contention misses the true determinative fact: the essential problem is not with the roll-off containers, themselves, but, rather, with the contents deposited in such containers by Trulargo's rental customers and Trulargo's disposal of such contents as part of its rental agreement. To the extent that the containers' contents are those of Trulargo's customers, it is extremely difficult to believe that they could be considered Trulargo's private property when Trulargo delivers an empty container to its customers and retrieves it at the end of the rental period after a customer has deposited his/her items in it.[3] Thus, we agree with the rationale of the PSC and its ALJ in concluding that Trulargo's operations constitute those of a common carrier by motor

---

[3]Counsel for Trulargo also advanced the argument that any items remaining in Trulargo's roll-off containers at the end of the rental period when Trulargo arrived to retrieve its containers was neither the property of others, *i.e.*, its customers, or the private property of Trulargo, itself. Rather, counsel suggested that such property falls within a third classification, namely that of abandoned property. It does not appear that this theory was presented to either the ALJ or the PSC to consider during the underlying proceedings. As such, we cannot now consider this novel argument at this late juncture. *See Whitlow v. Bd. of Educ. of Kanawha Cty.*, 190 W. Va. 223, 226, 438 S.E.2d 15, 18 (1993) ("Our general rule . . . is that, when nonjurisdictional questions have not been decided at the trial court level and are then first raised before this Court, they will not be considered on appeal. . . . The rationale behind this rule is that when an issue has not been raised below, the facts underlying that issue will not have been developed in such a way so that a disposition can be made on appeal. Moreover, we consider the element of fairness. When a case has proceeded to its ultimate resolution below, it is manifestly unfair for a party to raise new issues on appeal. Finally, there is also a need to have the issue refined, developed, and adjudicated by the trial court, so that we may have the benefit of its wisdom." (internal citations omitted)).

vehicle such that it is required to obtain a certificate of convenience and necessity to continue its activities and conclude that the PSC did not err by requiring Trulargo to cease and desist such activities until it has obtained the requisite certification.

Trulargo additionally argues that the PSC erred by requiring it to cease its rental operations because the PSC neither has the authority to regulate its roll-off container rental business or the manner in which it charges its customers for this service. We find both of these contentions to be without merit. As explained in the foregoing analysis, Trulargo misses the mark on these points. The rental business, itself, was not the focus of Republic's complaint or the PSC's inquiry with regard thereto. The gravamen of Republic's grievance was Trulargo's hauling of items to waste disposal sites that had been deposited in Trulargo's rented containers by its rental customers and, more specifically, conducting this hauling *without certification* from the PSC. In doing so, Trulargo's roll-off container rental and retrieval activities are squarely within the definition of a common carrier by motor vehicle such that Trulargo is required to obtain the PSC's approval before engaging in, or continuing, such activities.

## IV.

## CONCLUSION

For the foregoing reasons, we affirm the April 5, 2019 order of the Public Service Commission of West Virginia.

Affirmed.

14