# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

## September 2021 Term

_____

No. 21-0233

_____

**FILED**
**November 2, 2021**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## SRC HOLDINGS, LLC,
## FORMERLY KNOWN AS WILLIAMS HOLDINGS, LLC,
## DOING BUSINESS AS WILLIAMS TRANSPORT,
Petitioner

## V.

## THE PUBLIC SERVICE COMMISSION OF WEST VIRGINIA;
## DONALD R. ABNER,
## DOING BUSINESS AS AMBASSADOR LIMOUSINE AND TAXI SERVICE;
## AND CLASSIC LIMOUSINE SERVICE, INC.,
Respondents

_____

Appeal from Public Service Commission of West Virginia
Case No. 20-0020-MC-TC

AFFIRMED
_____

Submitted:  September 15, 2021
Filed: November 2, 2021

Michael W. Carey
David R. Pogue
Carey, Douglas, Kessler & Ruby, PLLC
Charleston, West Virginia
Attorneys for the Petitioner,
Williams Transport

Jessica M. Lane
General Counsel
Public Service Commission
of West Virginia
Charleston, West Virginia
Attorney for the Respondent,
Public Service Commission
of West Virginia

Jared C. Underwood

**Pullin, Fowler, Flanagan, Brown & Poe, PLLC**
**Beckley, West Virginia**
**Attorney for the Respondents, Donald R. Abner, doing business as Ambassador Limousine and Taxi Service, and Classic Limousine Service, Inc.**

**CHIEF JUSTICE JENKINS delivered the Opinion of the Court.**

**JUSTICE ARMSTEAD, deeming himself disqualified, did not participate in the decision of this case.**

**JUDGE DENT, sitting by temporary assignment.**

**SYLLABUS BY THE COURT**

1.  When considering whether a common carrier by motor vehicle certificate transfer application should be approved, it is not necessary to show that the requested transfer will serve the public convenience and necessity.

2.  A common carrier by motor vehicle certificate transfer application should be approved where the proposed transferee demonstrates that it is able to supply the public service the certificate authorizes because the proposed transferee has the experience, equipment, finances, and insurance to carry on the transferor's business under the certificate sought to be transferred.

3.  A dormant common carrier by motor vehicle certificate may not be transferred.

**Jenkins, Chief Justice:**

The petitioner herein, SRC Holdings, LLC, formerly known as Williams Holdings, LLC, doing business as Williams Transport ("Williams" or "Williams Transport"), appeals from an order entered February 17, 2021,[1] by the Public Service Commission of West Virginia ("PSC"). By that order, the PSC approved the application of one of the respondents herein, Ambassador Limousine and Taxi Service ("Ambassador"), to transfer the common motor carrier certificate held by the other respondent herein, Classic Limousine Service, Inc. ("Classic"), to Ambassador. On appeal to this Court, Williams argues that the PSC erred by approving the certificate transfer. The respondents herein, the PSC, Ambassador, and Classic, urge this Court to uphold the certificate transfer. Upon a review of the parties' arguments and briefs, the record designated for appellate consideration, and the pertinent authorities, we conclude that the PSC did not err by permitting Classic to transfer its common motor carrier certificate to Ambassador. Accordingly, we affirm the PSC's February 17, 2021 order.

## I.

### FACTS AND PROCEDURAL HISTORY

This appeal arises from Ambassador's application to transfer Classic's common motor carrier certificate to Ambassador. Prior to the proposed certificate transfer,

---

[1]On April 6, 2021, the Public Service Commission of West Virginia ("PSC") entered a corrective order to fix a clerical error in its February 17, 2021 order, from which the instant appeal has been taken. Because the April 6, 2021 order addresses only the correction of the clerical error and does not consider the merits of the case, we will refer to the February 17, 2021 order as the order at issue in this appeal.

Ambassador possessed three motor carrier certificates, which authorized it to operate in four West Virginia counties: Fayette, Greenbrier, Raleigh, and Summers. Classic, who holds the common motor carrier certificate sought to be transferred, is a smaller operation whose primary focus is to provide transportation for customers of its two restaurants in Raleigh County. Nevertheless, Classic also transports customers within the other eight counties authorized by the subject motor carrier certificate; in total, Classic's certificate authorizes it to operate as a motor carrier in nine West Virginia counties: Boone, Fayette, McDowell, Mercer, Monroe, Nicholas, Raleigh, Summers, and Wyoming.

Williams also has motor carrier certificates authorizing it to transport passengers in several West Virginia counties—Boone, Fayette, Lincoln, Logan, Raleigh, Summers, and Wayne—although it operates primarily in Boone and Logan Counties. Objecting to the transfer of Classic's common motor carrier certificate to Ambassador, Williams claimed that, because Classic provides minimal transportation services in all counties in its territory except for Raleigh County, Classic's certificate has become geographically dormant as to the remaining counties for which it is certificated. Williams also argued that Classic's certificate has become operationally dormant as to those customers who Classic does not regularly transport, such as railroad employees. Finally, Williams complained that allowing Ambassador to provide transportation services in these areas, both geographically and operationally, will amount to devastating competition to Williams. By order entered February 17, 2021, the PSC approved Ambassador's

application and allowed Classic to transfer its common motor carrier certificate to Ambassador. This appeal by Williams followed.

## II.

## STANDARD OF REVIEW

The instant proceeding is before the Court on appeal from a decision of the PSC. Our review of PSC rulings is guided by the following standard:

> "'The principle is well established by the decisions of this Court that an order of the public service commission based upon its finding of facts will not be disturbed unless such finding is contrary to the evidence, or is without evidence to support it, or is arbitrary, or results from a misapplication of legal principles.' *United Fuel Gas Company v. Public Service Commission*, 143 W. Va. 33[, 99 S.E.2d 1 (1957)]." Syl. Pt. 5, *Boggs v. Pub. Serv. Comm'n*, 154 W. Va. 146, 174 S.E.2d 331 (1970).

Syl. pt. 1, *Sierra Club v. Pub. Serv. Comm'n of W. Va.*, 241 W. Va. 600, 827 S.E.2d 224 (2019). *See also* Syl. pt. 2, *Monongahela Power Co. v. The Pub. Serv. Comm'n of W. Va.*, 166 W. Va. 423, 276 S.E.2d 179 (1981) ("In reviewing a Public Service Commission order, we will first determine whether the Commission's order, viewed in light of the relevant facts and of the Commission's broad regulatory duties, abused or exceeded its authority. We will examine the manner in which the Commission has employed the methods of regulation which it has itself selected, and must decide whether each of the order's essential elements is supported by substantial evidence. Finally, we will determine whether the order may reasonably be expected to maintain financial integrity, attract necessary capital, and fairly compensate investors for the risks they have assumed, and yet provide

3

appropriate protection to the relevant public interests, both existing and foreseeable. The [C]ourt's responsibility is not to supplant the Commission's balance of these interests with one more nearly to its liking, but instead to assure itself that the Commission has given reasoned consideration to each of the pertinent factors."). In view of this standard, we proceed to consider the parties' arguments.

## III.

## DISCUSSION

On appeal to this Court, Williams reasserts the issues it raised during its objection to the certificate transfer before the PSC: (1) Classic's limited use of its common motor carrier certificate has rendered it both geographically and operationally dormant making it nontransferable, and (2) Ambassador's proposed use of Classic's certificate essentially will create new competition in the same territory that Williams currently services.

The PSC certificate at issue in this case allows the holder to operate as a common motor carrier in the State of West Virginia. Pursuant to West Virginia Code section 24A-1-2(2) (eff. 2000),[2]

---

[2]We cite to the 2000 version of West Virginia Code section 24A-1-2 because that is the statutory enactment that was in effect at the time that Ambassador filed its January 2020 certificate transfer application. However, the recent amendments to this provision do not substantively change the definition of "common carrier by motor vehicle." *See* W. Va. Code § 24A-1-2 (eff. 2021) ("'Common carrier by motor vehicle' means any person who undertakes, whether directly or by lease or any other arrangement, to transport passengers or property, or any class or classes of property, for the general public over the

"[c]ommon carrier by motor vehicle" means any person who undertakes, whether directly or by lease or any other arrangement, to transport passengers or property, or any class or classes of property, for the general public over the highways of this state by motor vehicles for hire, whether over regular or irregular routes, including such motor vehicle operations of carriers by rail, water or air and of express or forwarding agencies, and leased or rented motor vehicles, with or without drivers[.]

Operation as a common motor carrier in West Virginia requires the issuance of a certificate by the PSC:

No common carrier by motor vehicle shall operate any motor facility for transportation of either persons or property for hire on any public highway in this state except in accordance with the provisions of this chapter, and no person, after January one, one thousand nine hundred forty, shall, at the same time, hold under this chapter a certificate as a common carrier and a permit as a contract carrier authorizing operations for the transportation of property by motor vehicles over the same route or within the same territory unless for good cause shown and the commission determines that such certificate and permit may be held consistent with the public interest and the policy stated in section one, article one of this chapter.

W. Va. Code § 24A-2-2 (eff. 1939). *See also* W. Va. Code § 24A-2-5(a) (eff. 1980)[3] ("It shall be unlawful for any common carrier by motor vehicle to operate within this state

highways of this state by motor vehicles for hire, whether over regular or irregular routes, including such motor vehicle operations of carriers by rail, water, or air, and of express or forwarding agencies, and leased or rented motor vehicles, with or without drivers[.]").

[3]Again, we cite the version of the statute that was in effect at the time of Ambassador's January 2020 certificate transfer application. However, we note that the recent legislative amendments to this provision do not impact our decision of this case. *See* W. Va. Code § 24A-2-5(a) (eff. 2021) ("It shall be unlawful for any common carrier by motor vehicle to operate within this state without first having obtained from the

without first having obtained from the commission a certificate of convenience and necessity."). Similarly, PSC approval also is required to transfer a motor carrier certificate from one carrier to another: "No certificate issued under this chapter shall be assigned or otherwise transferred without the approval of the commission." W. Va. Code § 24A-2-5(c).[4]

From these statutes, it is apparent that determining whether a certificate should be transferred rests within the discretion of the PSC. We previously have explained what considerations are and are not relevant to this decision. In regard to irrelevant factors, we have held that

> [t]he transfer of an existing certificate of convenience and necessity for a common carrier by motor vehicle is controlled by W. Va. Code, 24A-2-5(c) which states: "No certificate issued under this chapter shall be assigned or otherwise transferred without the approval of the commission." Subsection (c) does not contain any language requiring a

commission a certificate of convenience and necessity unless the common carrier is an emergency substitute carrier.").

[4]The 2021 legislative amendments also altered the text of West Virginia Code section 24A-2-5(c) by adding subsection (2) which imposes temporal requirements on the certificate transfer process; however, because this legislative language was not in effect at the time Ambassador filed its motor carrier certificate transfer application, these time periods do not apply to this proceeding. *See* W. Va. Code § 24A-2-5(c)(2) (eff. 2021) ("An application by a motor carrier to transfer a certificate of convenience and necessity, or a portion thereof, to another motor carrier possessing one or more certificates of public convenience and necessity for the same commodity shall be affirmed or denied within 90 days of the submission of a complete application for transfer. The commission shall make a determination within ten business days of receiving a transfer application if the application is complete and notify the applicant if additional information is required. If the commission shall fail to act on a complete application within 90 days, the application to transfer the certificate shall be deemed approved.").

showing that the public convenience and necessity be served by the transfer. We conclude that the transfer of such certificate does not depend upon a showing that the public convenience and necessity will be served.

Syl. pt. 1, *Chabut v. Pub. Serv. Comm'n of W. Va.*, 179 W. Va. 111, 365 S.E.2d 391 (1987). While a showing of public convenience and necessity is not necessary to transfer a common motor carrier certificate, two other factors are required to be satisfied: (1) the transferee's ability to provide the certificated service and (2) the certificate's continued viability due to lack of dormancy.

First, "[t]he chief inquiry at a transfer hearing is the ability of the proposed new certificate holder to carry on the business." Syl. pt. 2, *id.* This analysis requires a consideration of whether the transferee is a fit and proper party to hold the transferred certificate and to provide the public service authorized thereby. We have construed the fitness determination to include the following factors: "In a Public Service Commission proceeding to transfer a Motor Carrier permit, a carrier is 'fit and proper' when it has the experience, equipment, insurance and financial ability to carry on the business that is being transferred." Syl. pt. 3, *Solid Waste Servs. of W. Va. v. Pub. Serv. Comm'n*, 188 W. Va. 117, 422 S.E.2d 839 (1992).

Second, the certificate sought to be transferred must not have become dormant from nonuse, *i.e.* where the transferor has failed to provide the services the subject certificate authorizes it to supply. As to this factor, we have observed that

7

> [t]he concept of "dormancy" relates to the failure of a certificate holder to operate for a period of time under the certificate. This can give rise to several adverse consequences to the certificate holder such as a cancellation of the certificate or, in the event of a transfer, a finding that it is not transferable because of nonuse.

*Chabut*, 179 W. Va. at 114, 365 S.E.2d at 394 (citations omitted). *See also Cox v. Pub. Serv. Comm'n of W. Va.*, 188 W. Va. 736, 743, 426 S.E.2d 528, 535 (1992) (per curiam) (upholding PSC's "finding of dormancy" and resultant denial of transfer of common carrier by motor vehicle certificate based on certificate's dormancy).

Although we have not extensively considered the effect of the dormancy of a motor vehicle carrier's certificate, the PSC has found dormancy to be a crucial consideration in a certificate transfer proceeding and has ruled that a dormant certificate may not be transferred. In this regard, the PSC specifically has recognized that a criterion for determining whether a certificate transfer application should be approved is a finding "[t]hat the certificate is not dormant—that the holder thereof (transferor) has actively engaged in the operation under the certificate sought to be transferred[.]" *William P. Hopson*, M.C. Case No. 16280, at 2 (W. Va. Pub. Serv. Comm'n Apr. 17, 1978). In other words, "[t]he almost universal rule is that dormant rights will <u>NOT</u> [be] transferred unless a public need for the service can be shown." *Carroll Trucking Co.*, M.C. Case Nos. 132, 1902, and 3821, at 4 (W. Va. Pub. Serv. Comm'n July 13, 1976) (emphasis in original; citations omitted).

Moreover, "[t]he issue of dormancy is an important matter to be considered in a transfer proceeding . . . . [because] [t]he transfer of a dormant certificate would constitute a new service without demonstrating a public need therefore and could adversely affect any protesting carriers." *Hopson*, at 3 (citations omitted). Finally, with specific respect to the case *sub judice*, the PSC has observed that dormancy

> can be either geographical or operational in nature. Geographical dormancy is a failure to provide service to a representative number of points within the authorized area of service. Operational dormancy is the failure to provide all or a portion of the type of service which a certificate holder is authorized to render. In either case to determine whether or not a certificate is dormant, a determination must be made as to "whether substantial lawful operations have been performed under the certificate."

*Elk Valley Sanitation, Inc. v. Charles Edward Snodgrass*, M.C. Case 21268, at 4 (W. Va. Pub. Serv. Comm'n June 22, 1982) (quoting *Hopson*, at 3 (citations omitted)) (additional citation omitted). *See also James Eugene Fletcher*, Case No. 10-1799-MC-TC, at 6 (W. Va. Pub. Serv. Comm'n Apr. 20, 2012) (noting that PSC "will not rely strictly on the passage of a period of time to decide the issue of whether rights to a geographic area or rights to perform certain operations have become dormant").

To facilitate the consideration of these various factors in certificate transfer cases, we now hold that, when considering whether a common carrier by motor vehicle certificate transfer application should be approved, it is not necessary to show that the requested transfer will serve the public convenience and necessity. We additionally hold that a common carrier by motor vehicle certificate transfer application should be approved

9

where the proposed transferee demonstrates that it is able to supply the public service the certificate authorizes because the proposed transferee has the experience, equipment, finances, and insurance to carry on the transferor's business under the certificate sought to be transferred. Finally, we hold that a dormant common carrier by motor vehicle certificate may not be transferred. We further recognize that a common carrier by motor vehicle certificate becomes dormant when the certificate holder fails to substantially operate or otherwise supply the services the certificate authorizes it to provide.

Having established the standard by which to evaluate whether a common motor carrier certificate should be approved, we now consider the errors assigned on appeal. Among its various arguments, Williams complains that approving the requested certificate transfer and allowing Ambassador to provide common motor carrier services in the territory covered by Classic's certificate will create unfair competition because Williams already provides transportation services in that same area. We find this argument to be without merit, though, because consideration of whether a common carrier by motor vehicle certificate transfer should be approved does not turn on whether the transfer will serve public convenience and necessity, and, in fact, as recognized by our holding herein, such a showing is not required. *Accord* Syl. pt. 1, *Chabut*, 179 W. Va. 111, 365 S.E.2d 391.

Williams also argues that Ambassador's application to transfer Classic's motor carrier certificate to Ambassador should be denied because Classic's certificate is

dormant. In support of its arguments, Williams contends that Classic's certificate is geographically dormant as to all certificated counties but Raleigh because, although the subject certificate authorizes Classic to provide motor carrier services in nine counties, Classic historically has provided the majority of its transportation services in only one county—Raleigh. Likewise, Williams argues that Classic's certificate also is operationally dormant because Classic has not provided transportation for a specific type of customer, *i.e.* railroad employees, and, thus, Classic's failure to transport such customers has rendered its certificate dormant therefor.

We begin our consideration of these arguments by referring to the language of Classic's certificate that is at issue herein. Classic's motor carrier certificate authorizes the following operations:

> **Statement of Authority**
> to operate as a common carrier by motor vehicle in the transportation of passengers in limousine service between points and places in Boone, Fayette, McDowell, Mercer, Monroe, Nicholas, Raleigh, Summers and Wyoming Counties, on the one hand, and points and places in West Virginia, on the other hand.

The certificate further identifies the "**Commodities**" as "[l]imousine" and the "**Counties**" as "Boone[,] Fayette[,] McDowell[,] Mercer[,] Monroe[,] Nicholas[,] Raleigh[,] Summers[, and] Wyoming[.]" Notably, the certificate is silent as to the number of customers required to be serviced in each of the certificated counties. Also absent from the express language of the certificate is any limitation as to the type of customers Classic

11

is or is not authorized to transport thereunder; the only specification in this regard is the authority to transport "PASSENGER."

With respect to Williams's geographical dormancy argument, we reject Williams's contentions because the record evidence demonstrates that Classic has provided motor carrier services in each of the counties in which it is authorized to operate. As the PSC astutely explained in its order approving the certificate transfer:

> Williams Transport argued in its exceptions that the certificate to be transferred is geographically dormant in all counties except Raleigh because it is the only county where Classic Limousine conducted "substantial operations." The specific facts and circumstances of this case are relevant to a determination of what constitutes "substantial operations." Substantial operations in an urban area are certainly different from those in a rural area and are different for a garbage hauler compared to a taxi/limo service provider. It is not as simple as Williams Transport's comparison of the number of customers involved in the Cox case (urban garbage hauler) and the number of customers served by Classic Limousine (mostly rural limousine service). In this circumstance, the operator of Classic Limousine testified that 80% of its business occurred in Beckley/Raleigh County, but when called upon it made a bandful [sic] of trips each year into the eight other counties . . . . Given the largely rural nature of the area covered by this certificate, it is not particularly surprising the majority of the calls for limousine service occurred in Beckley. The mostly rural nature of the territory coupled with the existence of competition from other carriers make the few trips each year constitute substantial operations. Further, Classic Limousine did not refuse to provide service in any of the counties when called upon. Based on the foregoing, the Commission does not find this certificate to be geographically dormant. The Commission concludes that Classic Limousine conducted substantial operations under its certificate in all counties.

*Citing Cox v. Pub. Serv. Comm'n of W. Va.*, 188 W. Va. 736, 426 S.E.2d 528; (additional citation omitted). Thus, the PSC determined that Classic's motor carrier certificate is not geographically dormant. We find the PSC's reasoning in this regard to be legally sound and supported by the record evidence. *See* Syl. pt. 1, *Sierra Club v. Pub. Serv. Comm'n of W. Va.*, 241 W. Va. 600, 827 S.E.2d 224. Therefore, the PSC's finding that Classic's motor carrier certificate is not geographically dormant is hereby affirmed.

Williams also complains that Classic's motor carrier certificate is operationally dormant as to a certain type of passenger because Classic never transported railroad employees. To resolve this assignment of error, we first must determine whether Classic's certificate limits the type of passenger that it may transport. The certificate, itself, authorizes the transportation of "passengers," and grants authority to operate "limousines." The term "passenger" is not defined by statute or rule, but the term "limousine" is defined by the PSC's rules as follows:

> "Limousine" means a motor vehicle, equipped with at least three (3) doors, and with seating capacity, and separate sets of working seatbelts, for at least five (5) passengers, including the driver, in which a passenger or set of passengers is transported at a rate not less than ten dollars ($10.00) per vehicle trip or vehicle round trip, if that vehicle either (a) is used to transport passengers on a frequent basis between fixed points, such as airports and hotels or motels; or (b) is used as a specialized limousine.

13

W. Va. C.S.R. § 150-9-1.8.m. (eff. 2016).[5]  In determining that Classic's certificate was

not operationally dormant, the PSC ruled as follows:

> Williams Transport next argued that the certificate is operationally dormant as it pertains to the transportation of railroad workers.  The ALJ held that the certificate to be transferred is general in nature as it allows the transport of any class of customer by limousine.  The ALJ determined that because Classic Limousine has been transporting customers by limousine, its certificate is not dormant.  The Commission agrees.  Classic Limousine operated as a common carrier providing limousine service.  There is no evidence in the record that Classic Limousine refused to provide limousine service to railroad workers or to any other class of customer.  Classic Limousine provided service to customers that requested service. . . .
>
> . . . .
>
> The Commission finds that the certificate is valid for the general transportation of customers by limousine, which could include the transportation of railroad workers.

---

[5]Also defined by the PSC's rules is the term "specialized limousine" referenced in its definition of "limousine."  *See* W. Va. C.S.R. § 150-9-1.8.v. (eff. 2016) ("'Specialized limousine' means a limousine that is either: (a) a luxury vehicle; (b) a vehicle that has seating capacity, and separate sets of working seatbelts, for at least eight (8) passengers; or (c) a vehicle that was operated, and properly registered with the Commission, under a 'limousine' or 'specialized limousine' certificate on or before January 1, 2002.").  *But see* W. Va. Code § 24A-1-2 (eff. 2021) ("'Luxury limousine service' means passenger motor carrier service by pre-arranged appointment with a minimum charge of no less than $60.00, with a formally dressed chauffeur, using a large and luxurious sedan, sport utility vehicle, or van, or an antique vehicle: *Provided*, That 'luxury limousine service' does not include a passenger motor carrier that is serving railroad crews for railroad purposes or used for nonemergency medical transportation other than Medicaid members.").  Regardless of the specific definition employed, though, Williams Transport's operational dormancy argument contests the type of *passenger* to whom Classic's certificate applies and not the type of *vehicle* the certificate authorizes it to use to provide such transportation.

(Internal quotations and citations omitted). We agree with the PSC's conclusion that Classic's certificate is not operationally dormant as to the transportation of railroad employees because the certificate's authority permits the transportation of passengers, generally, and is not limited to any specific type of passenger. Furthermore, there is no evidence that Classic refused to transport railroad workers while operating under its motor carrier certificate. The PSC's reasoning in reaching this decision is legally sound and supported by the record evidence. *See* Syl. pt. 1, *Sierra Club v. Pub. Serv. Comm'n of W. Va.*, 241 W. Va. 600, 827 S.E.2d 224. Therefore, we affirm this ruling as well.[6]

## IV.

## CONCLUSION

For the foregoing reasons, we affirm the February 17, 2021 order of the Public Service Commission of West Virginia permitting Classic to transfer its common motor carrier certificate to Ambassador.

Affirmed.

---

[6]Our holdings herein also require a consideration of the prospective transferee's ability to continue the transferor's provision of services under the certificate sought to be transferred. *Accord* Syl. pt. 3, *Solid Waste Servs. of W. Va. v. Pub. Serv. Comm'n*, 188 W. Va. 117, 422 S.E.2d 839 (1992). However, the parties do not dispute that Ambassador is a proper party to operate under Classic's certificate and that Ambassador is able to provide Classic's certificated services. Moreover, the PSC approved Ambassador's request to transfer Classic's motor carrier certificate to it, thus finding Ambassador to be able to provide the public service for which the certificate was issued to Classic. Therefore, further consideration of this factor is not necessary to our resolution of this case.